UNITED STATES of America, and
Katherine A. Colunga,
Plaintiffs,

v.

HERCULES, INC., et al., Defendants.

No. 89–C–954 B.

United States District Court,
D. Utah,
Central Division.

May 24, 1996.

Lon D. Packard, Ronald D. Packard, Craig H. Johnson, Packard, Packard, & Johnson, Salt Lake City, UT, Michael T. Thorsnes, Daral B. Mazzarella, Thorsnes, Bartolotta, McGuire & Padilla, San Diego, CA, Brian W. Steffensen, Salt Lake City, UT, Rick J. Sutherland, Sutherland & England, Salt Lake City, UT, for Plaintiffs.

Gordon L. Roberts, Randy L. Dryer, Spencer E. Austin, James T. Blanch, Parsons, Behle & Latimer, Clark Nielsen, Henriod & Nielsen, Carlie Christensen, U.S. Attorney's Office, Salt Lake City, UT, Dennis C. Egan, Commercial Litigation Dept., U.S. Dept. of Justice—Civil Division, Clarence T. Kipps, Jr., Miller & Chevalier, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

BOYCE, United States Magistrate Judge.

The plaintiff, Katherine A. Colunga, brought this action ex rel the United States (qui tam) and individually against Hercules Inc., United Precision Machine & Engineering Company and T.J. Products, Inc., claiming violations by the defendants of the Federal False Claims Act (FCA), 31 U.S.C. § 3729. The plaintiff has alleged various forms of falsification and concealment by defendant Hercules and others from October 1981 to April 1992 in connection with nine missile systems for which Hercules had contracted with the United States. The complaint was first filed in October 1989 and first and second amended complaints were filed. The period of time for which plaintiff makes claim in this case is important because on October 27, 1986 Congress significantly amended the False Claims Act.

In the course of this litigation, the court requested the parties to attempt to narrow the issues and invited the filing of motions to summarily adjudicate matters that could possibly narrow the legal and factual issues for trial. As a consequence, Hercules has made several motions for summary adjudication of various contested issues. Among the strenuously contested issues is whether certain provisions of the FCA adopted in 1986 are retroactive. The court has ruled on several of these matters but reserved two questions for more thorough consideration.

The first issue is whether the mens rea standard of the 1986 amendments to the FCA, establishing the requirement that defendants' conduct be done "knowing" or "knowingly", as those terms are defined in 31 U.S.C. § 3729(b), is to be retroactively applied. Second is whether the so called qui tam jurisdictional bar provisions of 31 U.S.C. § 3730(e)(4)(A) which were modified by the 1986 amendments to FCA, have retroactive application.

It is Hercules' position that under applicable standards of retroactivity analysis that in neither situation should the amendment be applied retroactively or retrospectively. Plaintiff contends both provisions should have retrospective application.

### Retroactivity Analysis

Congress first enacted a false claims statute in 1863 during the Civil War to deal with fraud by contractors supplying the Government's military effort. Act of March 2, 1863, Ch. 67, 12 Stat. 696–98, reenacted Rev.Stat. §§ 3490–94 and 5438. See Boese, *Civil False Claims and Qui Tam Actions*, pp. 1–5.[1] The FCA essentially remained in its original form until 1943 when Congress made significant amendments. 31 U.S.C. §§ 232–235. These amendments established a so called, "jurisdiction bar" to a private qui tam action by requiring that the Government have no prior knowledge or information in its possession of the false claim and allowed the Justice Department to take over a qui tam case. The 1943 FCA also continued the same mental state for culpability of a defendant. It spoke in terms of defendant acting "knowingly," 31 U.S.C. § 3729 or "without completely knowing" that information was true with regard to a delivery of a certifying document. 31 U.S.C. § 3729(5). The relief was civil, *United States ex rel Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), although 18 U.S.C. § 287 also makes criminal the conduct of knowing presentation of a false claim.

In 1986 Congress again amended the FCA. It provided for a more precise and expanded definition of the statutory *mens rea* of knowing or knowingly, 31 U.S.C. § 3729(b), and the Government knowledge standard of the jurisdictional bar was changed. 31 U.S.C. § 3730(e)(4). The retrospective application of these two provisions is what Hercules' motion is directed at and it seeks to have the court conclude the amendments are not retroactive and not to be retrospectively applied.

---

**1.** The 1863 Act was also called the Informers Act and "Lincoln's Law." The 1863 Act contained a qui tam provision allowing any person, "as well as for himself as for the United States," to bring the action sec. 4, 12 Stat 696. This was accepted procedure in 1863. Boese, *supra*, 1–8.1; Note, *The History of the Development of Qui Tam*, 1972 Wash.U.L.Q. 8183; 3 W. Blackstone, *Commentaries on the Laws of England*, 160 (1768).

In *DeVargas v. Mason and Hanger–Silas Mason Co., Inc.,* 911 F.2d 1377 (10th Cir. 1990) the court articulated the retroactively problem with regard to the construction of federal statutes. The dispute arose in a civil rights case as to whether amendments to the Rehabilitation Act, 29 U.S.C. §§ 794–94a were to be applied retroactively. The court said where the congressional intent is clear that legislation was to be applied retroactively, that that intent governs. Id. p. 1384. Citing *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 837–838, 110 S.Ct. 1570, 1576–1577, 108 L.Ed.2d 842 (1990). In *Kaiser* the Supreme Court noted apparent tension in the retroactively analysis between its decision in *Bradley v. Richmond School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (court is to apply the law in effect at the time of its decision) and the court's decision in *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (retroactively not favored). See 494 U.S. at 837–838, 110 S.Ct. at 1576–1577. The court found it unnecessary in *Kaiser* to resolve the issue because the congressional intent against retroactive application was clear in that case. In *DeVargas,* supra, the court said the first point of reference was the statute. 911 F.2d at 1384. The court said the intent for retroactive application must be clear. Id. p. 1385. The court in *DeVargas* observed:

> We also find that the expressed congressional intent in the Senate report to "restore" section 504 to its pre-Grove City College interpretation reflects unambiguously only Congress's purpose to reverse the Supreme Court's program-specific reading of federal prohibitions on discrimination by programs or activities receiving federal financial assistance. Because we must find clear congressional intent to invoke retroactivity, we cannot read "restore" to mean "retroactively restore," particularly where the effect of such a reading would be to impose substantive liability for actions committed in reliance on Grove City College and its progeny prior to the passage of the Restoration Act in 1988.

911 F.2d p. 1385.

The court said where the retroactivity issue was not clear from the statute it would not be resolved on the basis of floor statements of individual legislators. Id. p. 1386–87. The court therefore examined the *Bradley/Bowen* line of Supreme Court decisions. The court in *DeVargas* concluded they were in "irreconcilable contradiction." Id. p. 1390. The court said that forced to choose between the lines of authority it chose *Bowen* as the proper standard and the amendments to the Rehabilitation Act were not to be applied retroactivity. With the obvious problems raised in *DeVargas* and *Kaiser,* as well as other cases, in the interpretation of Supreme Court decisions, the Supreme Court had to resolve the conflict and addressed the problem in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

In *Landgraf,* supra, the Supreme Court considered the retroactive application of the 1991 Amendments to Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et. seq. The court found Congress did not intend to put into the legislation a specific or explicit provision addressing the retroactivity of the legislation. 511 U.S. p. ——, 114 S.Ct. p. 1492. The court observed the doubts as to the applicable standards under its prior decisions. Id. pp. ——, ——, 114 S.Ct. pp. 1494, 1496. The court did reaffirm the presumption against retroactive application, Id. pp. ——, —— – ——, 114 S.Ct. pp. 1497, 1500–01, and said that Congress must make clear its intention for retroactive application of new legislation. Id. pp. ——, ——, 114 S.Ct. pp. 1498, 1499. The court also said that in making a determination of retroactivity in other than clear circumstances, a "court must ask whether the new provision attaches new legal consequences to events completed before the enactment." Id. p. ——, 114 S.Ct. p. 1499. The court observed, citing *Ex parte Collett,* 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949) that procedural rules may often be applied in suits without concerns about retroactivity. Id. p. ——, 114 S.Ct. p. 1502. The court in *Landgraf* said *Bradley,* supra, was not inconsistent with the presumption against retroactivity. The court in *Landgraf* then stated the process for determining retroactive application of legislation:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. p. ——, 114 S.Ct. p. 1505.

It is this standard that must be used in this case in assessing Hercules' contention for the non-retroactive application of the 1986 amendments of the FCA. The plaintiff contends there is congressional intent to apply the 1986 amendments retroactively. The plaintiff relies on the Senate Report to the Amendments. S.Rep. No. 345, 99th Cong., 2d Sess. (July 28, 1986), 1986 U.S.Code Cong. & Admin.News 5266. Nothing in that report contains an express statement that Congress intends the 1986 Amendments to apply retroactively. The Act itself is silent on the issue and under *Landgraf* the statute itself must be express for retroactive application before it will be said the statute is clear on its face. See also *DeVargas,* supra, rejecting an expression as governing the issue of retroactivity which was contained in a congressional report where the statute was not clear. The report, in this case, gives the congressional reasons and justification for the 1986 amendments to the Federal Claims Act (FCA) but it is inspecific as to general retroactive application.[2]

At hearing, counsel for plaintiff also relied on S.Rep. 345 with specific reference to the mental state required for liability. The report states:

New subsection (c) of section 3729 clarifies the standard of intent for a finding of liability under the act. This language establishes liability for those "who know, or have reason to know" that a claim is false. In order to avoid varying interpretations, the Committee further defined the standard as making liable those who have "actual knowledge that the claim is false, fictitious, or fraudulent, or acts in gross negligence of the duty to make such inquiry as would be reasonable and prudent to conduct under the circumstances to ascertain the true and accurate basis of the claim."

While it is clear that actual knowledge of a claim's falsity will confer liability, courts have split on defining what type of "constructive knowledge", if any, is rightfully culpable. In fashioning the appropriate standard of knowledge for liability under the civil False Claims Act, S. 1562 adopts the concept that individuals and contractors receiving public funds have some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek. A rigid definition of that "duty", however, would ignore the wide variance of circumstances under which the Government funds its programs and the correlating variance in sophistication as "to make such inquiry as would be reasonable and prudent to conduct under the circumstances to ascertain the true and accurate basis of the claim." Only those who act in "gross negligence" of this duty will be found liable under the false Claims Act.

The standard in S. 1562 is identical to that in S. 1134, the Program Fraud and Civil Remedies Act which was reported favorably by the Senate Governmental Affairs Committee in November of 1985 and is probably indistinguishable from the knowledge standard found in H.R. 4560, reported favorably from the House Judiciary Subcommittee on Administrative Law and Governmental Relations in May of 1986. The Committee believes that the definition of knowledge under the False Claims Act should not differ from the defi-

---

**2.** House Report H.Rep. 660, 99th Cong.2d Sess., (June 26, 1986) does not contain any express indication as to retroactive application of the False Claims Amendments Act of 1986.

nition of knowledge for any administrative adjudications regarding false claims. In both bills, the constructive knowledge definition attempts to reach what has become known as the "ostrich" type situation where an individual has "buried his head in the sand" and failed to make simple inquiries which would alert him that false claims are being submitted. While the Committee intends that at least some inquiry be made, the inquiry need on be "reasonable and prudent under the circumstances", which clearly recognizes a limited duty to inquire as opposed to a burdensome obligation. The phrase strikes a balance which was accurately described by the Department of Justice as "designed to assure the skeptical both that mere negligence could not be punished by an overzealous agency and that artful defense counsel could not urge that the statute actually require some form of intent as an essential ingredient of proof."

There is nothing in this statement that addresses retroactive application of the required mental state. The Report notes that prior federal case law involved a split of authority. The inference can fairly be drawn that the new definition of knowing is beyond what was clearly contemplated by the FCA before 1986 and that clarification by Congress was necessary. However, that does not state that the clarification [3] is to be retroactively applied.

Plaintiff relies on a statement in the Congressional Record, Cong.Rec. HR 9382–03 p. 18 where Congressman Berman asked to include a "legislative history" in the Congressional Record. Berman recites:

The bill adopts the Senate version of the knowledge standard that must be found to establish liability under this Act. It expressly acknowledges that no proof of specific intent to defraud the Government is required. There have been some erroneous court decisions that have misapplied the law in the past to require an intent to defraud. The language specified in this section of the law is intended to clarify what has been the law which has been properly interpreted in the case of *United States v. Cooperative Grain and Supply,* 476 F.2d 47, 56 (8th Cir.1973). Subsection 3 of Section 3729(c) uses the term "reckless disregard of the truth or falsity of the information" which is no different than and has the same meaning as a gross negligence standard that has been applied in other cases. While the Act was not intended to apply to mere negligence, it is intended to apply in situations that could be considered gross negligence where the submitted claims to the Government are prepared in such a sloppy or unsupervised fashion that resulted in overcharges to the Government. The Act is also intended not to permit artful defense counsel to require some form of intent as an essential ingredient of proof. This section is intended to reach the "ostrich-with-his-head-in-the-sand" problem where Government contractors hide behind the fact they were not personally aware that such overcharges may have occurred. This is not a new standard but clarifies what has always been the standard of knowledge required. pp. 20–21.

■ This statement in the Congressional Record is not properly used for the determination of legislative intent on retroactive application of the knowledge standard of FCA. It is well established that the statements of individual congressmen may not be utilized as an aid in assessing retroactivity. *Landgraf,* supra, p. ——, 114 S.Ct. p. 1495; *N.L.R.B. v. Health Care & Retirement Corp. of America,* 511 U.S. 571, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994); *DeVargas,* supra; *Scalise v. Thornburgh,* 891 F.2d 640 (7th Cir. 1989); *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). See also *Hadden v. Bowen,* 851 F.2d 1266 (10th Cir.1988); *Alazan–Apache Resident Assn. v. San Antonio Housing Authority,* 885 F.Supp. 949 (W.D.Tex.1995). In addition, as will be seen from case analysis, Congressman Berman's statement of "erroneous court decisions" has no support in the plain language of FCA when adopted in 1863 and amended in 1943, nor in an historical analysis of the case

---

**3.** The term "clarification" begs the question. Congress may refer to a change as a clarification, but the question is was it in fact a substantive change beyond the former legislation.

development. Equally doubtful is the statement that "[t]his is not a new standard."

The parties have asserted different positions as to whether the pre–1986 FCA had any authoritative interpretation in the Tenth Circuit. However, in *United States v. Shapleigh*, 54 F. 126 (8th Cir.1893) suit was brought under the 1863 FCA, Rev.Stat. § 5438. The assertion was made that defendant was negligent in the presentation of a false claim voucher. The court rejected the Government's position for liability. Id. p. 135. The court said the proof must be of the presentation of the claim "knowing the same to contain any fraudulent fictitious statement or truth ... It is not negligence, but guilty knowledge that is here prescribed." Id. p. 135. The expression in *Shapleigh* is not consistent with the standard now expressly set out in the 1986 amendments to the FCA. Of some significance is the fact that the case was decided in 1893. In 1866 the Eighth Circuit was formed and Colorado (1876, Wyoming (1890), Utah (1896), Oklahoma (1907) and New Mexico (1912) were eventually assigned to the Eighth Circuit. Kansas was also a part of the Eighth Circuit in 1866 when it was formed.[4] The first Utah case in the Eighth Circuit was in 1897[5] and *Shapleigh* was already a precedent in the Eighth Circuit. The Tenth Circuit was formed in April 1929.[6] When it was formed the current states of the Tenth Circuit were moved from the Eighth Circuit to the Tenth and prior Eighth Circuit precedent, under the accepted rule, would apply in the Tenth Circuit. *Santiago v. Lykes Bros. S.S. Co., Inc.*, 986 F.2d 423, 427 n. 2 (11th Cir.1993); *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350 (11th Cir.1994) (Eleventh Circuit recognizes all Fifth Circuit decisions rendered prior to the close of business on September 30, 1981);

*Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1208 (11th Cir.1981); *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982) (Prior body of law from predecessor courts is binding on the Federal Circuit). Therefore, *Shapleigh*, supra, should be considered as having had some precedential worth in the Tenth Circuit up until the 1986 change in the FCA.

*Fleming v. United States*, 336 F.2d 475, 480 (10th Cir.1964) was a case which arose under the 1943 FCA. Although the 1943 Act did make some changes to the 1863 FCA, especially procedural changes, the use of the term knowing or knowingly was not changed. In *Fleming*, the United States brought the action on behalf of a Government agency and alleged Fleming "knowingly and with intent to defraud" made and presented "false and fictitious claims." Id. p. 476. The court in addressing the double damages claim of the United States said that if the proof showed the making of the claim "knowing it to be false," the Government had made out its case. Id. p. 480. Although the consideration was not specifically and directly to the meaning of "knowing", the context of the case suggests actual knowledge was the understood standard.

The Tenth Circuit law, although not completely settling the pre–1986 meaning of the term knowing, does seem to support a conclusion for actual knowledge of the falsity of a claim was required for liability.[7]

### Other Decisions

Other courts have struggled with the pre–1986 meaning of knowing or knowingly under the F.C.A. In *United States v. United States Cartridge Co.*, 95 F.Supp. 384, 395 (E.D.Mo.1950) the court said:

4. *The Federal Courts of the Tenth Circuit: A History*, p. 281 (1992).

5. *Ibid*, table 2 p. 282.

6. *Ibid*, p. 292.

7. In *United States v. Blair*, 54 F.3d 639 (10th Cir.1995), in a non-FCA context the court said "knowledge" was a general intent standard. The court referred to its decision in *United States v.*

*Hall*, 805 F.2d 1410, 1420 (10th Cir.1986). *Hall* is not an exposition of the term knowledge, but the term is used in *Hall* in the sense of actual knowledge. Id. p. 1419–20. In *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) the court spoke to the mens rea for escape. The court adopted a standard of knowing, meaning the defendant must know he was leaving a jail. Id. pp. 407–408, 100 S.Ct. pp. 633–634.

Plaintiff cannot sustain the burden of proof by offering evidence there was a false representation in the claim for money for ammunition presented to plaintiff by the defendant, but must go further and present a record containing substantial evidence on which to base a finding that the defendant in presenting the false claim did so with the knowledge of its falsity and with intent that the plaintiff would rely and act on such false representation, and that the plaintiff did believe and rely on such false representation. It follows that evidence of irregular acts standing alone, even if fraudulent, in the process of manufacturing ammunition, do not meet the test to make a case under the statute: 'The fraud must be used in connection with making a claim against the Government'. 95 F.Supp. at 395.

The court referred to *Shapleigh*, supra, and to other cases treating the standard as one of fraud. *United States ex rel Weinstein v. Bressler*, 160 F.2d 403, 405 (2nd Cir.1947); *United States ex rel Brensilber v. Bausch & Lomb Optical Co.*, 131 F.2d 545 (2nd Cir. 1942) (pre–1943 Act) (statute is "drastically penal" and should be narrowly construed, Id. p. 547 [citing cases] aff'd by an equally divided court 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417 (1943). See also *United States v. Park Motors*, 107 F.Supp. 168 (E.D.Tenn.1952); *United States v. Beaty Chevrolet Co.*, 116 F.Supp. 810, 814 (E.D.Tenn.1953); *United States v. Goldberg*, 158 F.Supp. 544 (E.D.Pa. 1958); *United States ex rel Ostrager v. New Orleans Chapter*, 127 F.2d 649, 651 (5th Cir. 1942).

In *United States ex rel Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), the Supreme Court considered the construction of § 5438 Rev.Stat. being the FCA of 1863. The case involved sham bids on a competitive bidding government contract. The court said R.S. § 5438 was to be construed with upmost strictness. Id. pp. 540–541, 63 S.Ct. pp. 382–383. The court also said the substantive language has the same meaning for qui tam suits as for *criminal prosecutions*. Id. p. 542, 63 S.Ct. p. 383.[8]

The court referred to the statutory language "knowing such claim to be ... fraudulent." The court referred to the purpose of the statute as directed towards "war frauds." Id. p. 547, 63 S.Ct. p. 386. Although not directly considering the language of "knowing" the clear direction of the court's discussion of the meaning of the statute is that it was directed towards active fraud. This is supported by the later Court of Appeals cases interpreting *Marcus*, see *United States v. Bressler*, supra.

In *United States v. Priola*, 272 F.2d 589, 593–94 (5th Cir.1959) the court said, after quoting the requirement of knowing such claim to be false, etc., "The Government was therefore required to prove ... personally that she had this guilty knowledge of a purpose on the part of associates to cheat the Government ..." See also *United States v. National Wholesalers*, 236 F.2d 944, 950 (9th Cir.1956); *United States v. DeWitt*, 265 F.2d 393, 400 (5th Cir.1959). In *DeWitt*, Judge Brown, in his dissent, discussed the mental state required by the statute. The portion of the dissent was not contested by the majority and was later favorably cited by the Fifth Circuit in *Priola* at p. 594 no. 9. Judge Brown said:

As we are 'construing the provisions of a criminal statute ...,' *United States v. McNinch*, 356 U.S. 595, at page 598, 78 S.Ct. 950, at page 952, 2 L.Ed.2d 1001, note c, supra, principles relating to criminal law are of immediate relevance. 'Knowing' the claim to be false then is equivalent, or at least akin, to willfully submitting a false claim. 'The two words 'knowingly' and 'willfully' are often used as equivalents. Certainly, the mere omission of the word 'willfully' is not to be construed as eliminating the element of criminal intent from the crime.' *Zebouni v. United States*, 5 Cir., 1955, 226 F.2d 826, 828. In the context of this very Act relating to veterans' housing, we have defined willful to mean 'conscious that what he was doing was unlawful.'

265 F.2d p. 403.

("... we are actually construing a criminal statute").

---

8. See *United States v. McNinch*, 356 U.S. 595, 598, 78 S.Ct. 950, 952, 2 L.Ed.2d 1001 (1958)

In *Klein v. United States*, 285 F.2d 778, 152 Ct.Cl. 8 (1961) the court, construing the 1943 FCA and referring to "anyone knowingly making a false claim. . . ." said the "evidence of fraud must be clear and convincing." The conclusion of the *Klein* court supports a requirement of actual knowledge.

In *United States v. Mead*, 426 F.2d 118 (9th Cir.1970) interpreting the FCA under 31 U.S.C. §§ 231–233, the Government sought to move the Ninth Circuit away from its position in *National Wholesalers, supra*. The court refused. The court held the intent to move from the common law meaning must be clear. Id. p. 123. The court said:

"The Ninth Circuit has adopted the rule that to recover under the False Claims Act, the government must prove that the defendant had the specific intent of deceit. In *United States v. National Wholesalers*, 9th Cir., 236 F.2d 944, cert. den. 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 724, recovery was sought against a successful bidder for a government contract who delivered spuriously labeled voltage regulators to the Army. In applying the Act, this Court stated the requirement that 'undoubtedly there must be the intent to work a deceit on the government.' 236 F.2d at 950. The government urges that the False Claims Act dispenses with the specific intent to defraud requirement in all but two categories of conduct which are not involved here. However, the government's position rests upon a shaky foundation of semantic distinctions. The juxtaposition of the three adjectives, 'false, fictitious, or fraudulent' probably resulted from a draftsman's desire to encompass the varying ways in which fraud is defined. Judicial definition of fraud indicates that there is not an accepted distinction between a knowingly false claim and a fraudulent claim. *United States v. Interstate Engineering Corp.*, D.N.H., 288 F.Supp. 402; *Travelers Indemnity Co. v. Harris*, E.D.Mo., 216 F.Supp. 420. No reason is apparent why only two of the six types of conduct proscribed in the False Claims Act should require the element of specific intent to defraud. Since no reason appears for a partial elimination of the intent requirement, we are unwilling to find a Congressional intent to make such a distinction by subtle means. A further consideration is the familiar principle of construction that no statute is to be construed as altering the common law further than its words import. Intent to defraud has always been an essential element of common law fraud and Congressional intent to partially dispense with that element in the False Claims Act is lacking.

The Government had the burden of showing by clear explicit and unequivocal evidence that *Mead* had knowledge that the claims were false." [9]

426 F.2d at 122–123.

In, *Mead* the court also cited to *Fleming v. United States, supra*, from the Tenth Circuit for the proposition that "knowing a claim to be false is equivalent at least akin to willfully submitting a false claim." *Mead, supra* at p. 123 n. 3. The position in *Mead* was followed by the Seventh Circuit in *United States v. Hughes*, 585 F.2d 284 (7th Cir.1978). In *United States v. Ekelman and Associates*, 532 F.2d 545 (6th Cir.1976) the Sixth Circuit, in a FCA case said the gravamen of the action under the Act is "intentional fraud and misrepresentation." [10] The court held that actual knowledge of the falsity of the representation had to be shown. Id. p. 548. "Thus the law of this circuit requires actual knowledge to establish liability under the False Claims Act." The court said the position was the "preponderant view." Id. Recklessness was expressly rejected as a basis for liability. 532 F.2d at 549–550. This conclusion is supported by *United States v. Aerodex, Inc.*, 469 F.2d 1003 (5th Cir.1972); *Klein v. United States, supra*, (Cl.Ct.1961); *Eastern School v. United States*, 381 F.2d 421, 180 Ct.Cl. 676 (1967). Annotation, *Specific Intent to Defraud Government As Nec-*

---

**9.** The court cited to *Woodbury v. United States*, 232 F.Supp. 49 (D.Or.1964) (actual knowledge required for FCA violation) and *Proctor v. Sagamore Big Game Club*, 265 F.2d 196 (3rd Cir. 1959).

**10.** Citing to *United States v. Ueber*, 299 F.2d 310, 314 (6th Cir.1962).

*essary To Impose Liability Under Provisions of False Claims Act Pertaining to "False" or "Fictitious" Claims or Statements.* 26 ALR Fed. 307 (1976).

■ The case most frequently referenced for the position that actual knowledge was not required, prior to 1986 for a FCA claim is *United States v. Cooperative Grain and Supply Co.,* 476 F.2d 47 (8th Cir.1973). The court took the unusual position of suggesting a different standard to "knowing" dependent on whether a criminal or civil action under the FCA was involved. Id. p. 59.[11] The court referred to its decision in *Shapleigh,* supra, and put it aside even though *Cooperative Grain* was not en banc.[12]

The court did not carefully canvass the positions of the other federal circuits or the Supreme Court that had considered the issue, but relied on the textual position in Prosser, *Torts,* 715–716 (2d Ct.1964).[13] The court concluded that extreme carelessness was sufficient. 476 F.2d at p. 60. This decision took license with the reference to Professor Prosser. Prosser made no distinction in the term knowledge as between civil

and criminal and where Congress used the term to cover both remedies the distinction is unwarranted. Further, Prosser acknowledged that the traditional rule on misrepresentation was to require intent or scienter, citing *Perry v. Peck,* [1889] 14 AC 337 and *Restatement of Torts* § 526(b). Reckless disregard of the truth was the equivalent of scienter for misrepresentation. *Cooper v. Schlesinger,* 111 U.S. 148, 4 S.Ct. 360, 28 L.Ed. 382 (1884). However, the court in *Cooper* said that recklessness also required an absence of knowledge of the truth of the statement. See also 31 U.S.C. § 3729(5). When Congress intends a lesser standard than actual knowledge, it has said so. However, none of these authorities and points goes to the essence of the definition of knowledge in the FCA or the congressional intent for fraud.[14] It is apparent that *Cooperative Grain* is a minority position and a maverick in its construction of the FCA.[15] Further, it is inconsistent with *Marcus, McNinch* in the Supreme Court and with *Fleming* and arguably *Shapleigh* as precedents in the Tenth Circuit, as well as the majority of appeals court interpretations.[16]

---

11. The position appears contrary to the Supreme Court's statements in *Marcus* and *McNinch,* supra.

12. Most circuits do not allow a panel to overrule the decision of another panel unless a Supreme Court decision has changed the law. *Investment Co. Institute v. FDIC,* 728 F.2d 518 (D.C.Cir. 1984); *N.L.R.B. v. Datapoint Corp.,* 642 F.2d 123 (5th Cir.1981); *Willis v. United States,* 614 F.2d 1200 (9th Cir.1979); *Hutchins v. Woodard,* 730 F.2d 953 (4th Cir.1984); *United States v. Olivares–Vega,* 495 F.2d 827 (2d Cir.1974); *Sikora v. American Can Co.,* 622 F.2d 1116 (3rd Cir.1980); *United States v. Killion,* 7 F.3d 927 (10th Cir. 1993); *In re Smith,* 10 F.3d 723 (10th Cir.1993); *Hechler v. International Brotherhood of Elec. Workers,* 834 F.2d 942 (11th Cir.1987). The Eighth Circuit has at least recognized an en banc ruling is normally necessary to overrule a panel decision *United States v. Wright,* 22 F.3d 787, 788 (8th Cir.1994); *United States v. Wilson,* 37 F.3d 1342 (8th Cir.1994). See also *United States v. Wise,* 976 F.2d 393, 401 (8th Cir.1992) (*en banc*) and *Walker v. Lockhart,* 726 F.2d 1238, 1253 (dissenting opinion) (8th Cir.1984). The fact that a prior decision is "old" absent some legislative change or Supreme Court decision does not change the rule. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803) is "old" but still good law. In this sense, *Cooperative Grain,* supra is a questionable precedent. Usually if a conflict exists in

decisions in a circuit, the earlier decision rules. *Shapleigh,* supra, should govern in the Eighth Circuit. *Newell Companies, Inc. v. Kenney Mfg. Co.,* 864 F.2d 757 (Fed.Cir.1988).

13. Prosser, 2d Ed., is miscited. Pages 715–716 do not refer to the material referenced in *Cooperative Grain.* The appropriate pages in the second edition of Prosser appear to be 537–546.

14. Reference in *Cooperative Grain* and Prosser *Torts,* 2d Ed. to "negligence" is irrelevant to the issue. The discussion on this issue in Prosser is as to tort liability for misrepresentation. No other case has been found under FCA where this exact standard has been applied. The negligence standard was not actually applied in *Cooperative Grain,* however, *Cooperative Grain* was followed in *Miller v. United States,* 550 F.2d 17, 213 Ct.Cl. 59 (1977). No reference was made in *Miller* to prior Court of Claims decisions requiring actual knowledge.

15. To this extent Congressman Berman's reference to *Cooperative Grain,* supra, as the correct interpretation of the FCA is unsupportable.

16. The court acknowledges that in *Miller v. Federal Emergency Management Agency,* 57 F.3d 687 (8th Cir.1995) the Eighth Circuit continued to adhere to the position in *Cooperative Grain.*

Chief Judge Winder's opinion in this District in *Boisjoly v. Morton Thiokol, Inc.*, 706 F.Supp. 795, 808 (D.Utah 1988), in mentioning the elements of a FCA claim, refers to knowingly in terms that suggest an actual knowledge standard, although the opinion does not expressly so state or consider the matter in depth. See also *Alsco–Harvard Fraud Litigation*, 523 F.Supp. 790 (D.D.C. 1981); *United States v. Kennedy*, 431 F.Supp. 877 (C.D.Cal.1977) (knew the claim was false).

In *United States v. Ehrlich*, 643 F.2d 634 (9th Cir.1981) the court upheld FCA sanctions observing "Ehrlich knew a false claim would be submitted each month." The court applied and assumed the term knowing to mean actual knowledge. A similar construction was expressed in *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416 (9th Cir.1991) but the term was expanded on by applying the 1986 amendments. The court said innocent mistakes and mere negligence were insufficient. The case was decided in 1991 after the 1986 amendments to the FCA. The events, in the case, apparently occurred prior to 1986. The court appeared to apply the post 1986 amendments since it said:

> To take advantage of a disputed legal question, as may have happened here, is to be neither deliberately ignorant nor recklessly disregardful.

This appears to be a retroactive application of the 1986 amendments. See also *Wang v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir. 1992).

In, *United States v. Murphy*, 937 F.2d 1032 (6th Cir.1991) the court said the amendments did not apply retroactively and that "Murphy could only have been held liable prior to the amendments on a clear showing of actual knowledge of the falsity of the claims that were submitted." 937 F.2d at 1038. The court referred to its prior opinions in *United States v. Ekelman & Assoc.*, 532 F.2d 545, 548 (6th Cir.1976) as requiring actual knowledge. In *United States v. Data Translation, Inc.*, 984 F.2d 1256, 1266 (1st Cir.1992) the United States argued the pre–1986 knowing standard for the state of mind for liability would accommodate deliberate ignorance of the truth or reckless disregard of the truth. The court rejected the contention:

> We disagree, and we, like the district court, believe that, prior to the 1986 amendments, the statute included a single intent standard: actual knowledge of falsity. See, e.g., *United States v. Mead*, 426 F.2d 118, 123 (9th Cir.1970); *United States v. Murphy*, 937 F.2d 1032, 1038 (6th Cir. 1991), citing *United States v. Ekelman & Assoc., Inc.*, 532 F.2d 545, 548 (6th Cir. 1976); *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1007 (5th Cir.1972).

984 F.2d p. 1266.

Recently in *United States v. TDC Management Corp.*, 24 F.3d 292 (D.C.Cir.1994) the court considered the meaning of the term knowing in the pre–1986 FCA. The court ruled that a party "knowingly" presented false claims to the government under the pre–1986 FCA if the claimant had actual knowledge, or acted with deliberate ignorance or reckless disregard of the truth or falsity of his claims. The court said intent to deceive was an element only if the Government asserted that defendant deliberately submitted a false claim. The Government had argued the post 1986 amendments should be applied retroactively because they were only clarifications of preexisting law and not "new law." Id. p. 298. The court did not reach the retroactively issue but merely interpreted the pre–1986 law to comport with the 1986 amendments. The opinion is devoid of any analytical reference to prior law and merely noted a difference of views among the federal circuits. The conclusion of the court was couched apparently in terms of congressional intent but without any discussion of what evidence of congressional intent was supportive to the conclusion the court reached. To the extent that the court was looking to congressional intent at the time of the enactment of the FCA, there is no support for such a position, nor does the 1943 legislation support a conclusion for a finding of such a congressional intent. The court simply made a policy judgment that to construe the statute as the majority of courts had done "would readily permit parties to evade liability ..." Id. p. 297. However,

that is the reason given as to why Congress made the 1986 Amendments to the FCA. To construe the pre–1986 FCA in this manner does violence to fairness and the principle of *nulla peona sine lege*.[17]

What constitutes knowledge within the concept of a mens rea is a variable and differential concept, Perkins & Boyce, *Criminal Law* 3d Ed. p. 861–869 (1982). It encompasses various possible definitions. It includes a spectrum from actual knowledge through to negligence. Id. p. 870. The Second Circuit equated knowledge with reckless disregard in *United States v. Egenberg*, 441 F.2d 441, 444 (2d Cir.1971) in "making a false statement" under 18 U.S.C. § 1001. See also *United States v. White*, 765 F.2d 1469 (11th Cir.1985). But see to the contrary *United States v. Vaughn*, 797 F.2d 1485 (9th Cir.1986); *United States v. Martin*, 772 F.2d 1442 (8th Cir.1985); *United States v. Chenault*, 844 F.2d 1124 (5th Cir. 1988) (considering knowledge under 18 U.S.C. § 495); *United States v. Guzman*, 781 F.2d 428 (5th Cir.1986) (18 U.S.C. § 1001); *United States v. Harrod*, 981 F.2d 1171 (10th Cir.1992); *United States v. Kingston*, 971 F.2d 481 (10th Cir.1992).[18] It would be difficult to conclude that at anytime during the history of the FCA that there was a settled, established meaning to the term "knowing" that included reckless disregard of the truth. No legitimate conclusion can be drawn that such a standard satisfied the knowledge requirement of the FCA and was intended by Congress. See also Rollin M. Perkins, "Knowledge As A Mens Rea Requirement", 29 *Hastings L.J.* 953 (1978).[19]

The post 1986 legislation also includes in the definition of knowing an expansion of the term which includes conduct when one "acts in deliberate ignorance of the truth or falsity of the information." The concept of deliberate ignorance[20] as part of the pre–1986 FCA definition of knowing cannot be supported by any case holding prior to the *TDC Management* case, supra. Deliberate ignorance was never held to be an aspect of the definition of knowing under the 1863 FCA. Although, English courts had applied the "deliberate ignorance" or "willful blindness" concept in some Nineteenth Century criminal cases, *Regina v. Sleep*, 8 Cox CC 472, 480 169 Eng. Rep. 1296 (Cr.Cas.Res.1861). See *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976); Edwards, *The Criminal Degrees of Knowledge*, 17 Modern L.Rev. 294, 298 (1954). Perkins & Boyce, *supra*, pp. 867–871 (concept "used chiefly in England"). The concept was not as well accepted in the United States, Jonathan L. Marcus, *"Model Penal Code Section" 2.02(7) and Willful "Blindness"* 102 *Yale L.J.*, 2231 (1993). The concept has had a unsettled history in Canada. *Regina v. Hayes*, 104 CCC3d 316 (Quebec App.1995). The United States Supreme Court adopted the Model Penal Code definition of "knowing" in *Leary v. United States*, 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 1553 n. 93, 23 L.Ed.2d 57 (1969); *Turner v. United States*, 396 U.S. 398, 416 n. 29, 90 S.Ct. 642, 652 n. 29, 24 L.Ed.2d 610 (1970). The Model Penal Code approach is not exactly the same as deliberate ignorance as an independent concept for knowledge, at least in drug prosecutions.

In *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) in a prosecution for knowing possession of stolen Treasury checks the prosecution was required to prove a traditional knowledge standard that the defendant knew the checks were stolen. Id. p. 845, 847–852, 93 S.Ct. p. 2362–2363, 2363–2366. The United States Supreme Court has referred to willful ignorance as an applicable concept for knowledge where there is an affirmative *statutory* duty to acquire knowledge. *Spurr v. United States*, 174 U.S. 728, 19 S.Ct. 812, 43 L.Ed.

---

**17.** It should be observed that the FCA is akin to a criminal statute even though it provides for a civil remedy. See *Cooperative Grain*, supra, *United States ex rel Marcus v. Hess*, supra.

**18.** The Model Penal Code adopted in 1962 did not equate knowledge with recklessness § 2.02(2)(b).

**19.** It is recognized that in *Derry v. Peck*, 14 App.Ca. 337 (HL 1889) that recklessness was sufficient for civil fraud to be found in a particular context.

**20.** The concept is also often referred to as "willful ignorance" and "connivance" or "willful blindness."

1150 (1899). This position was decided after the passage of the "Abraham Lincoln's" FCA.[21] The concept of deliberate ignorance has had an uneven adoption in the federal courts, Marcus, *supra,* 102 Yale L.J. 2234–2235. There is significant conflict as to substantive meaning of the concept among federal circuits, with a limited application in the Tenth Circuit. Marcus, supra pp. 2243–2253.[22] The historical status of the "deliberate avoidance" concept as one of recent application in federal courts is acknowledged in *United States v. Pacific Hide & Fur Depot, Inc.,* 768 F.2d 1096, 1099 (9th Cir.1985). This suggests[23] that courts have only relatively recently been applying the concept and that its application has been patchwork from statute to statute. In, Robin Charlow, *Willful Ignorance and Criminal Culpability,* 70 *Texas L.Rev.,* 1351 (1992) it is said, "willful ignorance is employed in criminal law, primarily, and most controversially as a mental state that satisfies a required mens rea of knowledge. The practice of considering willful ignorance, a form of, or substitute for, knowledge first appeared in and has evolved almost exclusively through case law, with little or no critical analysis" Id. p. 1353. "Existing problems in the use of willful ignorance . . . are exacerbated by the numerous different formulations used to describe the concept." Id. p. 1354 n. 8. It has been positively argued that willful ignorance and knowledge are not the same thing. Ira P. Robbins, *"The Ostrich Instruction: Deliberate Ignorance As A Criminal Mens Rea",* 81 J.Crim.L. & Criminology, 191–220–27 (1990); *Comment, Willful Blindness and Substitute for Criminal Knowledge,* 63 Iowa L.Rev. 466, 473 (1977). To say that deliberate ignorance had a settled meaning as a substitute for

knowledge in the FCA enactments prior to 1986 is a sheer fanciful conclusion. This seems especially true in the context of the FCA's knowing standard for civil liability.

Recent decisions from the Supreme Court do not support a conclusion that knowledge in its in definitional sense includes recklessness or deliberate ignorance. Congressional amplification was needed. *Barnes v. United States,* supra; *Cheek v. United States,* 498 U.S. 192, 203, 111 S.Ct. 604, 611, 112 L.Ed.2d 617 (1991) (applying actual knowledge to willfulness concept in the prosecution); *Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (term willful in financial structuring offense required showing defendant knew his activities were unlawful); *Staples v. United States,* 511 U.S. 571, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (possession of an unregistered machine gun requires knowledge of the offending characteristics of the weapon). See also *United States v. X–Citement Video,* —— U.S. ——, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (knowledge that performer is a minor is required for conviction under Protection of Children Against Sexual Exploitation Act of 1977) (citing to *Staples,* supra and *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). See also *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) and *United States v. Gypsum Co.,* 438 U.S. 422, 436–37, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978); *United States v. Bailey,* supra, (knowledge required for mens rea for escape). The Supreme Court's recent treatment of knowledge in criminal cases has not shown a settled meaning comparable to the conclusion reached in *TDC Management,* supra. There has been no wholesale move by the Supreme Court in its interpretation of

**21.** California in dicta recognized a form of the concept in *People v. Brown,* 74 Cal. 306, 16 P. 1 (1887), but not in conjunction with affirmative fraud. In *Griego v. United States,* 298 F.2d 845, 849 (10th Cir.1962) the court said in a narcotics smuggling case a "conscious purpose to avoid learning the source" of the drug was a proper instruction.

**22.** See *United States v. de Francisco–Lopez,* 939 F.2d 1405 (10th Cir.1991); *United States v. Sasser,* 974 F.2d 1544, 1551–1552 (10th Cir.1992); *Griego v. United States,* 298 F.2d 845, 849 (10th Cir.1962).

**23.** *United States v. Cooperative Grain and Supply Co.,* supra, did not refer to deliberate ignorance or its equivalent. 476 F.2d at pp. 58–61. In *United States v. Cook,* 586 F.2d 572, 579 (5th Cir.1978) a "conscious purpose to avoid learning" the truth instruction was upheld in a prosecution for a false contract claim under 18 U.S.C. § 287 where the statutory standard is knowing. However, earlier cases had required a stricter standard. See e.g. *United States v. Bittinger,* 24 Fed.Cas. No. 141599 (D.Colo.1875).

statutes and application of the concept of knowledge to adopt the expanded standard found in 31 U.S.C. § 3729(b). Based on the above factors the court must conclude that the District of Columbia Circuit's position in *United States v. TDC Management Corp.*, supra, is not a correct interpretation of pre–1986 FCA law.[24]

■ It must be concluded that, although there is a minor split in the opinions of the circuits, Boese, *supra*, 2–66 (1995 Supplement) the overwhelming majority position is that actual knowledge or intent to defraud was required for an FCA violation prior to 1986 where the term "knowing" was to be applied. The 1986 amendments in 31 U.S.C. § 3729(b) were a "clarification" but one of a substantive change and widening of the previous mental state for a violation of the FCA. There is no legitimate support for the statement of Congressman Berman that the post 1986 Amendments were no more than a clarification of the intent of Congress in the original legislation and necessary because of erroneous court interpretations. The 1986 Amendments in 31 U.S.C. § 3729(b) were a vast, obvious, expansion of the substantive standard for FCA liability over the pre–1986 law. It is also contrary to the prior interpretation and application of the pre–1986 law in the Tenth Circuit and the Supreme Court.

■ It is therefore necessary to examine the *Landgraf*, supra, criteria to determine if the standard set forth in 31 U.S.C. § 3729(b) should be the applied mens rea standard to the pre–1986 conduct involved in this case.[25]

■ In *Landgraf*, supra, the court noted a presumption against retroactive legislation. Id. p. ——, 114 S.Ct. p. 1497. One concern is

the potential for unfairness and lack of adequate warning to a person. Id. p. ——, 114 S.Ct. p. 1498. That concern applies in this case. The relief sought is not just prospective. Damages are backward looking and so is any change in mens rea culpability. Id. p. ——, 114 S.Ct. p. 1506. The retroactive application of 31 U.S.C. § 3729(b) would impose a different duty of mental attention, after the fact, with regard to transactions already completed and impair the substantive standard for liability that a party could expect to be applicable to pre–1986 transactions. *Landgraf*, p. ——, 114 S.Ct. p. 1505. Therefore, the mens rea standards in 31 U.S.C. § 3729(b) should not be applied to the conduct of defendants prior to October 27, 1986 (P.L. 99–562).

### *Retroactivity of the "Jurisdictional Bar" 1986 Amendments*

Prior to 1986, 31 U.S.C. § 3730(b)(4) provided that:

Unless the Government proceeds with the action, the court shall dismiss an action brought by the person on discovering the action is based on evidence or information the Government had when the action was brought.

Thus, the qui tam relator could not maintain the action unless the Government did not have information as to the wrongful conduct when the suit was brought. See *United States ex rel. State of Wisconsin v. Dean*, 729 F.2d 1100 (7th Cir.1984).[26] However, the United States could still maintain the suit. It was only the private plaintiff who lacked standing to maintain the suit.[27] The qui tam claim, in this case, is not a personal claim of

---

**24.** In fact, to apply the post 1986 31 U.S.C. 3729(b) standard, to pre–1986 conduct, would in the context of a criminal prosecution raise serious due process problems. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *United States v. Rascon*, 8 F.3d 1537, 1540 (10th Cir.1993); *Lustgarden v. Gunter*, 966 F.2d 552 (10th Cir.1992). The same might be true on a civil case with the intended punitive consequences. *Patton v. TIC United Corp.*, 77 F.3d 1235, 1243 (10th Cir.1996). See also *Southwestern Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 35 S.Ct. 886, 59 L.Ed. 1419 (1915).

**25.** As noted before, infra p. 1427, there is a split in the courts on the retroactivity of the "know-

ing" standard in 31 U.S.C. § 3729(b). However, the pre *Landgraf* cases are no longer assurance that the application used by the courts was the correct standard for determining the retroactive application of § 3729(b).

**26.** The *State of Wisconsin*, case was one which Congress felt justified a change in the jurisdictional bar statute.

**27.** All FCA actions for a § 3729 violation are brought for the United States and in the name of the United States. 31 U.S.C. § 3730(b)(1).

the relator, except for a retaliation claim. The United States is the real party in interest. *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center,* 961 F.2d 46 (4th Cir.1992); *Note,* 43 *Stan. L.Rev.* 1061 (1991). The limitation on prior knowledge qui tam suits was referred to as a jurisdictional bar to a private suit. It had been imposed by the 1943 Amendments to the FCA.

In 1986 Congress amended the FCA to eliminate some of the restrictive scope of the prior jurisdictional bar, finding the courts had been unduly rigid in the application of the jurisdictional bar provision thereby discouraging private enforcement. S.Rep. No. 345, 99th Cong.2d Session, U.S.Code, Congressional, and Admin.News, 5266.[28] Congress enacted 31 U.S.C. § 3730(e)(4)(A) & (B) which now provides: ·

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

The amendment obviously expands the instances when a private person may bring a qui tam action. Public disclosure of false claim allegations or transactions is now the determining point of limitation on private suits unless the relator is an original source of the information. *Stinson, Lyons & Bustamante,* 79 F.3d 136 (Fed.Cir.1996); *Federal Recovery Services v. United States,* 72 F.3d 447 (5th Cir.1995); *United States ex rel Precision Co. v. Koch Industries, Inc.,* 971 F.2d 548 (10th Cir.1992); *Fine v. Sandia Corporation,* 70 F.3d 568 (10th Cir.1995); *United States ex rel. Siller v. Becton Dickinson & Co., By and Through Microbiology Systems Div.,* 21 F.3d 1339 (4th Cir.1994); *Houck on Behalf of U.S. v. Folding Carton Admin. Committee,* 881 F.2d 494 (7th Cir.1989). The

injury giving rise to the action is to the Government not the relator except in the case of the whistle blower provision. *United States ex rel. Milam v. University of Texas, M.D. Anderson Cancer Center,* supra. The statute allows the private relator to bring the suit if there has been no public disclosure by the enumerated means *or* the public employee was the original source of the liability information. The defendants contend that under the pre–1986 provision, plaintiff relator could not have maintained the suit. However, the United States could have maintained the suit. There is no expansion of the kind of conduct giving rise to liability, merely an expanded status of persons and circumstances under which the suit could be maintained. Defendant asserts that under the 1986 FCA plaintiff is allowed to obtain relief where before she could not have on pre–1986 conduct. The defendant contends that under *Landgraf,* supra, the new provision § 3730(e)(4) cannot be applied retroactively.

In *United States ex rel. Eagleye v. TRW, Inc.,* 4 F.3d 417 (6th Cir.1993) cert. denied —— U.S. ——, 114 S.Ct. 1370, 128 L.Ed.2d 47 (1994) the court considered whether pre–1986 conduct was subject to the jurisdictional bar for government knowledge that was applied before the 1986 amendment, where the litigation was commenced before the 1986 change. The court concluded the 1986 amendments to the FCA did not apply retroactively. The court said the amendments contained no clear indication that they should be applied retroactively. Id. p. 421. See, accord, *United States ex rel. Newsham v. Lockheed Missiles and Space Co.,* 907 F.Supp. 1349 (D.N.D.Cal.1995). The court did not have the benefit of the Supreme Court's decision in *Landgraf,* supra. Therefore, much of the court's analysis in *Eagleye* is not helpful. The court did conclude that the post 1986 provisions of § 3730(e) was to "effect the substantive rights of both the qui tam and government" plaintiffs. Id. p. 422. However, the court's analysis of the substantive effect on the Government, p. 422 n. 5, does not show any significant substantive change for the Government but only a differ-

---

**28.** The legislative history of the jurisdictional bar amendment is not of assistance in interpreting the meaning of the statute or congressional intent, except to support a conclusion that an expanded opportunity for private enforcement was intended.

ent procedural process. For these reasons *Eagleye* is not fully persuasive to the post *Landgraf* analysis that must be applied in this case.

■ The plaintiff must bear the burden of proving the entitlement to proceed under the jurisdictional basis for a qui tam action. *United States v. Northrop Corp.*, 5 F.3d 407, 409 n. 5 (9th Cir.1993); 31 U.S.C. § 3731(c). The Ninth Circuit considered the issue of the retroactivity of the jurisdictional bar provision of 31 U.S.C. 3730(b)(4) in *United States ex rel. Anderson v. Northern Telecom Inc.*, 52 F.3d 810 (9th Cir.1995). The district court had dismissed part of the plaintiff's suit on the basis of that the conduct occurred before the effective date of 31 U.S.C. § 3730(b)(4). The Court of Appeals said if the old law applied the case was properly dismissed. The court said Congress enacted an "entirely new scheme." Id. p. 813. The Court of Appeals referred to the *Landgraf,* supra, standards and to the *TRW, Inc.*, supra, case from the Sixth Circuit. However, the court concluded it need not address retroactivity. The defendant committed the alleged violations before the 1986 amendment, but the relator did not act until after the amendment and the amendment applied to the relators conduct not the defendants.[29] Therefore, there was only prospective application as to the relator's role.

Subsequently, *Lindenthal v. General Dynamics Corp.*, 61 F.3d 1402, 1406 (9th Cir. 1995) cert. denied —— U.S. ——, 116 S.Ct. 1319, 134 L.Ed 2d 472 (1996) was decided. The court considered the jurisdictional provision of 31 U.S.C. § 3730(e)(4). The court held there was no impediment to retrospective application of the relator's authority and standing to maintain the suit. The court applied *Landgraf,* supra, in its analysis:

> This Court has clarified the terminology Landgraf employs by using the term "retrospective" to describe application of a new

statute to events that occurred before its enactment, and reserving the term "retroactive" to describe a statute that, if applied, would attach new legal consequences to conduct or transactions already completed. See *United States v. $814,254.76,* 51 F.3d 207, 210 n. 3 (9th Cir.1995). Thus, *Landgraf* teaches that courts should not apply "retroactive" statutes "retrospectively" absent clear congressional intent. *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1505. This Court recently addressed whether to apply section 3730(e)(4)(A) retrospectively. *Anderson,* 52 F.3d at 814, held that the provision does apply to a claim filed after the amendments by a relator who had revealed information to the government after the 1986 amendments became effective but before filing suit. Thus, because the government had the information when the relator filed suit, his claim would have been barred under the proamendment version of the FCA but not under the postamendment version. The *Anderson* panel, however, expressly declined to decide whether the section was "retroactive." *Id.* at 814. Instead, it focused on the effect of the new statute on the relator, whose relevant conduct—disclosure of information to the government— occurred after the amendments. It reasoned that because the relator "acted after the amendment, *1408 and the amendment changed the consequences only of [the relator's] conduct," *id.* at 814, the case did not require the Court to decide whether to apply the amendment retrospectively: "[The relator's] conduct took place after it, so benefitted from the new law." *Id.* The *Anderson* panel thereby avoided the key inquiry under *Landgraf* because application of the new law to the case at hand did not constitute application to conduct that had occurred prior to 1986. In this case, by contrast, the government did have the information forming the basis of the claim

---

29. Just when relator Colunga acted with regard to the relevant conduct in this case has not been precisely delineated for the purposes of this motion, but it is assumed for this motion only, that part of relators actions were pre–1986. The plaintiff's memorandum refers to *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416 (9th Cir.1991) in support of retroac-

tive application of 31 U.S.C. § 3730(e)(4). The case does not support the contention. The court did apply the 1986 Amendments to the FCA to 1982 conduct, but no objection to retroactive application was raised and the court did not discuss the issue. The parties apparently tried the case assuming the 1986 FCA applied.

prior to the enactment of the amendments, and there is no relevant postamendment conduct that might allow us to say our application of the new law is prospective only. We therefore cannot avoid deciding whether the new provision is "retroactive" simply by focusing on an event such as disclosure that occurred after the amendments. Instead, we directly face the question whether section 3730(e)(4)(A) should apply retrospectively. For the following reasons, we hold that the new jurisdictional provision does not have retroactive effect, and therefore that the district court properly applied it retrospectively. The new jurisdictional provision does not impair any rights GD had when it acted, nor did the provision at issue increase GD's liability for past conduct, or impose new duties. [FN6] This amendment relates to whether a qui tam relator can bring the action, not to whether the GD is liable for the underlying fraud. See *Anderson*, at 814 ("[The defendant] submitted the allegedly false claims before the 1986 amendment became effective. But the 1986 amendment did not change the legal consequences of [the defendant's] conduct. If [the defendant] really did submit a fraudulent claim, it became liable and remained liable to the government....."). Thus, the amendment did not alter GD's underlying liability; it only altered the conditions under which a qui tam relator can bring an action to enforce that liability.

FN6. We emphasize that our analysis and holding applies only to § 3730(e)(4)(A). The analysis might be different for other provisions of the 1986 amendments, such as those that explicitly raise the penalties for submission of false claims. Compare 31 U.S.C. § 3729 (1982) (imposing penalty of $2000 plus two times the actual damages) with 31 U.S.C. § 3729(a) (1988) (imposing penalty between $5000 and $10,000 plus three times the actual damages).

GD argues that the amendment has retroactive effect because it altered GD's rights by eliminating an "absolute defense." We reject this argument. Proof that the government had the information when suit was brought was not an "absolute defense" under the proamendment FCA. Rather, it was simply a jurisdictional defense to an action brought by a qui tam relator, as opposed to an action brought directly by the government. Additionally, the *Landgraf* Court, in dicta, noted that it has "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." —— U.S. at ——, 114 S.Ct. at 1501. "Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" Id. at ——, 114 S.Ct. at 1502 (quoting *Republic Nat'l Bank v. United States*, [506] U.S. [80], [99], 113 S.Ct. 554, 565, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring)). The provision at issue here fits this paradigm precisely. Prior to the amendment, a court had no authority to hear an FCA qui tam claim if the government already had the information forming the basis of the claim; after the amendment, it did have authority to hear such a claim, provided that the claim was not based on a public disclosure. The amendment simply did not alter GD's underlying obligation not to commit fraud upon the government. We therefore affirm the district court's retrospective application of section 3730(e)(4)(A) to this case. 61 F.3d at 1407–08.

Subsequently, in *United States ex rel. Schumer v. Hughes Aircraft*, 63 F.3d 1512, 1517 (9th Cir.1995). The court concluded that the 1986 Amendments to the qui tam jurisdictional bar provision did not infringe on substantive rights and that the provisions of § 3730(e)(4) would be applied retrospectively.

In *Hyatt v. Northrop Corporation*, 80 F.3d 1425 (9th Cir.1996) the court held the special filing requirements in the 1986 Amendments to the FCA would not be applied retrospectively to a suit filed before the effective date of the new amendments, but that applying *Landgraf's* standard of "retroactive effect" i.e. "impairment of a parties rights possessed when it acted, the elimination of the prior government knowledge" defense could be applied retroactively. The court concluded

there was no impairment of the substantive rights of the Government contractors. All of the conduct had occurred prior to the 1986 Amendments to the FCA. Relying on *Lindenthal,* supra, *Anderson,* supra and *Schumer,* the court said the jurisdictional bar is not an absolute defense that a defendant has to an FCA claim. The court also said the separate amendments to the 1986 FCA must be independently analyzed. Therefore, § 3730(e)(4)(A) should be applied retrospectively.

In the second appeal of *Hagood v. Sonoma County Water Agency,* 81 F.3d 1465 (9th Cir.1996) the court held its previous opinion at 929 F.2d 1416, had not resolved the jurisdictional bar issue, but applied the jurisdictional bar provision retrospectively. Id. p. 6. However, plaintiff did not otherwise meet his burden for recovery.

The Ninth Circuit decisions are persuasive. The jurisdictional provisions of § 3730(e)(4) merely expanded the opportunity for the qui tam relator to pursue the liability that otherwise existed between the Government contractor and the United States. The new standard has provided another resource to correct fraud and wrongdoing in the field of Government contracts. Applying § 3730(e)(4) retrospectively does not impose liability where none previously existed, it only gives the relator the opportunity to pursue the claim. Although in practical terms this may cause a claim to be pursued where otherwise it would remain hidden or unable to be pursued because of insufficient Government resources, this is not a retroactive effect by establishing liability where none existed. Therefore, for purposes of the application of 31 U.S.C. § 3730(e)(4), the plaintiff may maintain the action regardless of when the conduct occurred or when the complaint was filed. § 3730(e)(4) will be applied retrospectively. Therefore,

**IT IS HEREBY ORDERED:**

1. The definition of knowing to be applied in this case will depend on whether the alleged wrongful conduct of defendant occurred prior to October 27, 1986. If it did, actual knowledge of any nonrepresentation must be shown by plaintiff. After that period, the standard of knowing will be that of 31 U.S.C. § 3729(b).

2. The plaintiff qui tam relator may pursue the claims in this litigation and the applicable jurisdictional standard applicable to the case will be that set forth in 31 U.S.C. § 3730(e)(4).