**MILE HIGH THERAPY CENTERS, INC., Plaintiff,**

v.

**Otis R. BOWEN, Secretary, Department of Health and Human Services and Francis T. Ishida, Health Care Financing Administration, Regional Office for Denver, Colorado, Defendants.**

**Civ. A. No. 86–F–1853.**

United States District Court,
D. Colorado.

May 25, 1988.

Nancy P. Tisdall, Denver, Colo., for plaintiff.

Chalk Mitchell, Asst. U.S. Atty., Jay A. Swope, Asst. Regional Counsel, Dept. of Health and Human Services, Region VIII, Denver, Colo., for defendants.

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the court on cross-motions for summary judgment. This is an action arising under the Medicare Act, 42 U.S.C. § 1395 *et seq.*, for judicial review of a final agency decision. Two claims for relief remain.[1] The first claim alleges that by determining the amount of overpayment by means of a sampling under the authority of § 7150 of the *Medicare Carrier's Manual* and a HFCA ruling, defendants violated the Administrative Procedure Act and the Social Security Act. The third claim alleges the same statutory violations for use of the *Medicare Intermediaries' Manual* in retroactively denying plaintiff's presumptive waiver of liability status.

I.

Plaintiff Mile High Therapy provides physical therapy and speech therapy services to individuals enrolled in Part B of the Medicare program. Plaintiff submitted claims for these services to Blue Cross/Blue Shield of Colorado.

1. Plaintiff's second claim for relief was dismissed by Judge Kane on June 1, 1987 pursuant

The Health Care Financing Administration (HFCA) conducted an audit of Mile High's claims for 1980. Based on this audit, Blue Cross conducted a second audit for the period July 1, 1981 through June 30, 1982. A statistical sampling method was used in the audit. According to defendants, the audit revealed plaintiff had been overpaid $26,984.74. Blue Cross then extrapolated that sample to the total claims submitted and determined an overpayment of $164,109.00.

Plaintiff requested and received a hearing on both audits. The hearing officer issued a final decision on July 10, 1986. The hearing officer held: (1) the overpayment determined for the audit period January 1 through December 31, 1980 was time barred; (2) defendants were entitled to recover $117,813.00 of the original overpayment assessment; (3) the overpayment amount was properly determined by means of a sampling procedure described in § 7150 *et seq.* of the *Medicare Carrier's Manual;* (4) the sample was not invalid under the Manual guidelines; and (5) defendants' retroactive denial of plaintiff's presumptive waiver liability status, pursuant to § 3433.5 of the *Medicare Intermediaries Manual,* was proper. This appeal followed.

II.

Plaintiff challenges the overpayment calculations on two grounds. Mile High alleges the use of a statistical sample violated the Medicare Act and that the *Medicare Carrier's Manual* and a pertinent ruling of the HFCA were not implemented in accordance with the rulemaking procedures of the APA, 5 U.S.C. § 553. Defendants contend the Manual and the HFCA ruling are merely interpretive rules not subject to the APA. They also claim the sample procedure was within their statutory authority.

The publication notice and comment requirements of the APA apply to "substantive rules of general application

to an agreement of the parties.

adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D). "[I]nterpretive rules, general statements of policy, or rules of agency organization, procedure, or practice" are exempted from the rulemaking requirements. 5 U.S.C. § 553(b)(A). As a result, agencies are only required to publish rules and policy statements if they constitute a change from the existing law, policy or practice. *Knutzen v. Eben Ezer Lutheran Housing Center*, 815 F.2d 1343, 1351 (10th Cir.1987).

■ The *Medical Carrier's Manual* and the HFCA ruling explaining the statistical sample method are merely interpretations of an existing statute. They do not create new law or depart from prior practice.[2] Agency manuals, guidelines and memoranda are interpretive rules not subject to the APA. *See Creighton Omaha Regional Health Care Corp. v. Bowen*, 822 F.2d 785, 791 (8th Cir.1987); *Cubanski v. Heckler*, 781 F.2d 1421, 1426 (9th Cir.1987). Defendants did not violate the APA in using the Manual as a means of calculating overpayments.

■ The agency adopted a statistical sampling method when claims are voluminous and a case-by-case review is not administratively feasible. (HFCA Ruling 86–1, attached to defendants' motion to dismiss and for summary judgment). In adopting this method, the agency relied on its authority to use any reasonable means to recover overpayments. *Id.* at 5–6. 42 U.S.C. § 1395g(a) authorizes "necessary adjustments on account of previously made overpayments or underpayments." 42 U.S.C. § 1395u(a) gives the Secretary authority to make determinations of the rates and amounts of payments to be made for services and conduct audits to insure proper payments are made. 42 U.S.C. § 1395x(v)(1)(A)(ii) provides for retroactive corrective adjustments in payments when the cost proves inadequate or excessive.

A reasonable interpretation of the statute by the administrator of an agency is entitled to considerable weight. *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *Knutzen*, 815 F.2d at 1349. The above statutory citations give the Secretary considerable discretion and authority to maintain the integrity of the Medicare payment system. The statistical sample method is one way of exercising this power. The agency's policy does not exceed their statutory authority.

### III.

■ The hearing officer adopted the intermediary's determination that plaintiff was not entitled to waiver of liability status for the audited claims and upheld the retroactive denial of that status. Plaintiff contends this action, based on § 3433.5 of the *Medicare Intermediaries Manual*, violates the APA and exeeeded the scope of the agency's authority.

42 U.S.C. § 1395pp provides that a provider's liability to reimburse for overpayments will be waived if the provider did not know or could not be expected to know that payment could not be made for the services at the time they were provided. 42 C.F.R. § 405.332(b) implements this statutory provision and states a provider is presumed not to have actual or imputed knowledge that services were not covered "in the absence of evidence to the contrary." The procedures for determining a "presumptive waiver" are outlined in the *Medicare Intermediaries Manual.*

Section 3433.5 states that new information may require a redetermination of the provider's waiver status. In this case, plaintiff was retroactively denied a waiver for the audit period.

For the reasons stated above, we find the *Medicare Intermediaries Manual* was not subject to the APA publication requirements. We also find the Manual is a reasonable interpretation of the agency's statutory authority. The Manual attempts to flesh out the necessary procedures for evaluating evidence rebutting a presump-

---

**2.** Defendants have stated the agency has used   some form of sampling since at least 1972.

tive waiver. The agency did not exceed its authority.

ACCORDINGLY, defendants' Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Summary Judgment is DENIED. The Clerk of the Court is DIRECTED to enter judgment in favor of the defendants and against the plaintiff. The complaint and cause of action are DISMISSED.

Dan Ross, Washington, D.C., for plaintiff.

Stanley Hallman, Denver, Colo., pro se.

Ericsson Boucher, Duluth, Minn., pro se.

Pamela A. Boucher, Chicago, Ill., pro se.

Mary K. Boucher, Richmond, Tex., pro se.

A. Rowland Boucher, Littleton, Colo., pro se.

Andrea Boucher, Los Altos, Cal., pro se.

Denise Boucher, Littleton, Colo., pro se.