**UNITED STATES of America**

v.

**John LORENZO.**

No. 89–6933.

United States District Court, E.D. Pennsylvania.

Jan. 11, 1991.

Michael M. Baylson, U.S. Atty., James G. Sheehan, David H. Ward, Asst. U.S. Attys., for U.S.

Gratz, Tate, Spiegel, Ervin & Ruthrauff, R. Mark Armbrust, Philadelphia, Pa., for Prime Medica Associates and J.D. Investments.

Joseph M. Fioravanti, Curran, Winning & Fioravanti, Media, Pa., for John Lorenzo, U.S. Mobile Dental Care Systems, Inc., John Lorenzo, D.D.S., P.C., John Lorenzo, D.D.S.

Robert J. Spiegel, Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia, Pa., for Diana Lorenzo, Prime Medica Associates and J.D. Investments.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This suit by the government asserts claims under the False Claims Act, 31 U.S.C. § 3729, as well as related common law causes of action including fraud, breach of contract, unjust enrichment and payment under mistake of fact. The threshold issue is whether the defendant dentist, John Lorenzo, and his associated companies were entitled to bill Medicare for oral cancer examinations of nursing home residents. Subsidiary issues include the personal liability of Diana Lorenzo and whether the corporate entities operated as the alter ego of John and Diana Lorenzo.

Jurisdiction is premised on 28 U.S.C. § 1345.

After an examination of the evidence presented at the bench trial and after consideration of the briefs and arguments of counsel, the court makes the following

## FINDINGS OF FACT

1. Plaintiff is the United States of America acting through the Department of Health and Human Services (HHS), which administers the Health Insurance for the

Aged and Disabled Act established by Subchapter XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.* (Medicare).

2. In Pennsylvania the Medicare program is administered through a private contractor, Pennsylvania Blue Shield (PBS). In New Jersey the program is administered through the Prudential Insurance Company. These private contractors process the Medicare claims submitted by health care providers.

3. The defendant, John Lorenzo, is a Doctor of Dental Surgery licensed to practice in Pennsylvania and New Jersey. He practiced dentistry under the style of John Lorenzo, D.D.S., P.C., a Pennsylvania corporation with its principal place of business at 207 N. Broad Street, Suite 601, Philadelphia, Pennsylvania.

4. Defendant, U.S. Mobile Dental Care Systems, Inc., is a Pennsylvania corporation formed for the purpose of supplying dental services to nursing home residents and residents of other facilities such as prisons, who do not have access to dental care. U.S. Mobile had its principal place of business at 207 N. Broad Street, Suite 601, Philadelphia, Pennsylvania.

5. Defendant, Diana Lorenzo, is the wife of John A. Lorenzo and held the office of president of U.S. Mobile until 1988.

6. Defendants, Prime Medica Associates and J.D. Investments are partnerships consisting of John and Diana Lorenzo with a place of business at 207 N. Broad Street, Suite 601, Philadelphia, Pennsylvania.

7. U.S. Mobile entered into contracts with the operators of nursing homes to supply dental services.

8. U.S. Mobile employed a number of dentists, most of whom were recent dental school graduates and were paid on a commission or salary basis for full-time or part-time work.

9. During the years 1983 through 1988, John Lorenzo and dentists employed by U.S. Mobile performed routine dental examinations at nursing homes in Pennsylvania and New Jersey. These examinations included an oral cancer screening. An examination of the oral cavity head and neck

for cancer is an integral part of a standard dental examination.

10. As a result of information learned at a seminar in late 1985, John Lorenzo decided that Medicare would be billed for certain dental procedures, including an oral cancer examination. A health care professional employed by him advised him that a cancer examination of the oral cavity head and neck could be billed as a "limited consultation" Code 90600.

11. Accordingly, the dentists at U.S. Mobile were instructed to do a dental examination and an oral cancer examination and to document the results on the record.

12. In 1986 U.S. Mobile, on behalf of its dentists, began to submit bills for oral cancer examinations to Pennsylvania Blue Shield and Prudential Insurance Co. for processing.

13. In almost every case, however, the "examinations" were nothing more than the oral cancer screening that previously had been done as part of a routine dental examination. None of these examinations had been conducted at the request of an attending physician or because of a specifically identified medical concern.

14. Prudential Insurance Company rejected the claims submitted on behalf of New Jersey residents, but PBS authorized payment on behalf of Pennsylvania residents.

15. Sometime prior to February 1987 several of the dentists working for U.S. Mobile as well as the Medical Director of a group of nursing homes challenged U.S. Mobile's right to bill Medicare for the oral cancer procedures.

16. As a result, U.S. Mobile sought guidance from a representative of PBS who advised that the payment forms were being properly prepared. In giving this advice, the representative was not told that the "limited consultations" had not been requested by attending physicians nor was the representative informed that the examinations were routine screenings unrelated to particular medical problems.

17. U.S. Mobile submitted 3683 claims to Medicare through Pennsylvania Blue Shield and received $130,719.10 in return.

18. U.S. Mobile billed Medicare $50.00 per examination while billing private patients $25.00 per examination and Medicaid $6.00 to $8.00 per examination.

19. Defendants also billed for 190 Pennsylvania and New Jersey Medicaid patients for routine dental examinations at the rates of $6.00 to $8.00 while at the same time they were billing PBS and Prudential for the oral cancer screenings on the basis of a "limited consultation."

## DISCUSSION

It is the government's position that Medicare cannot be billed for oral cancer examinations by a dentist unless they are specifically requested by the patient's treating physician to evaluate or relieve existing symptoms. The government does not contend that the procedures were not performed, but that the examinations were not "consultations."

Both the statute and the regulations issued thereunder would seem to provide ample support for the government's position.

Section 1862 of the Health Insurance for the Aged and Disabled Act (The Act), 42 U.S.C. § 1395y, provides in pertinent part:

> (a) Notwithstanding any other provision of this title, no payment may be made under part A or part B for any expenses incurred for items or services—
>
> .   .   .   .   .
>
> (7) where such expenses are for routine physical checkups,
>
> .   .   .   .   .
>
> (12) where such expenses are for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth, except that payment may be made under part A of this subchapter in the case of inpatient hospital services in connection with the provision of such dental services if the individual, because of his underlying medical condition and clinical status or because of the severity of the dental procedure, requires hospitalization in connection with the provision of such services;

These proscriptions are echoed in the Medicare regulations. Routine physical checkups, other than for the diagnosis of a specific illness, are not covered, 42 C.F.R. § 405.310(a)(1) and dental services in connection with the treatment of teeth or structures directly supporting the teeth are not covered, 42 C.F.R. § 405.

The defendants, on the other hand, argue that they obtained blanket approval to conduct the cancer screening programs by the explicit terms of the contracts between U.S. Mobile and the nursing home operators or by the oral approval of the medical directors of the several homes. Defendants rely on PBS's Procedure Terminology and Manual (PT & M) which arguably allows nursing homes to make referrals for consultation ("referring physician or *other source*") and the New Jersey Department of Health, Division of Health Facilities Evaluation, Licensing Standards for Long Term Care Facilities that define a dental examination and an oral cancer examination as separate procedures.

This argument begs the question. The issue is not whether U.S. Mobile was authorized to conduct the examination but whether Medicare can be billed for such an examination. Authorizing a dentist to conduct an examination is not the same as requesting a consultation with respect to a specific medical problem. New Jersey's Nursing Home standards do not aid defendants' cause, but simply identify two components of the same examination. Most of the dentists who testified in this case were emphatic in stating that an oral cancer examination is an integral part of a standard dental examination. Defendants have conceded as much—at least in an academic setting. (See Proposed Findings of Fact and Conclusions of Law of Lorenzo and U.S. Mobile, No. 26).

■ The defendants performed routine dental examinations, classified a component of those examinations as a "limited consultation" and billed Medicare accordingly. Whether such procedures are characterized as a "screening" or an "examination", it is clear that under the Act and the regula-

tions defendants are not entitled to be paid by Medicare for those services.

With respect to the Pennsylvania and New Jersey Medicaid claims under the Pennsylvania Department of Public Welfare regulations and guidelines for the provision of dental services the initial dental exam is to include a cancer exam of the oral cavity head and neck. Commonwealth of Pennsylvania, Department of Public Welfare, Bureau of Utilization Review—Dental Program Protocol for Dental Consultants Recipient Field Evaluation, Recipient Record Review. The Department of Public Welfare Regulation that is codified at 55 Pa.Code Section 1101.63 provides:

> Providers shall consider the Department's fees or rates to be payment in full. A provider who seeks or accepts supplementary payment of any kind from the Department, the recipient or any other person for a compensable service or item shall be required to return the supplementary payment.

Defendants billed Medicaid-covered patients in Pennsylvania for the initial exam which included the cancer examination. Medicare was then billed for those same patients for the performance of the same cancer examination billed under Medicaid.

Under New Jersey Medicaid Codes for Dental Services, an initial oral examination requires a thorough observation of all conditions present in the oral cavity and contiguous structures.

Defendants billed New Jersey Medicaid patients for this initial exam which included the oral cancer exam. Defendants then billed plaintiff for the same oral cancer exam billed to New Jersey.

█ It is a violation of Title 10, Chapter 49–1.17(d) under New Jersey Medical Assistance for a provider to "submit false information for the purpose of obtaining greater compensation than to which the person is legally entitled."

The False Claims Act (FCA), 31 U.S.C. § 3729 as amended on October 27, 1986, provides for treble damages and civil penalties against anyone who knowingly presents or causes to be presented to an officer or employee of the United States a false or fraudulent claim for payment or approval or who knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the government. 31 U.S.C. § 3729(a)(1) and (2).

I have no difficulty in concluding that the claims submitted by U.S. Mobile constituted false claims. The health insurance claim forms were prepared in such a way as to disguise a routine dental checkup as a limited consultation consisting of "a cancer examination of the oral cavity head and neck."

Under the FCA, "the terms 'knowing' and 'knowingly' mean that a person, with respect to information—(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required". 31 U.S.C. § 3729(b).

The evidence is clear that John Lorenzo knew that, except in very limited circumstances, dental services are not covered by Medicare and he was also aware that routine checkups are not covered. Indeed, Dr. Lorenzo advised his patients to write their Congressmen to urge Medicare coverage for dental services and further, up until 1986, Lorenzo and U.S. Mobile had not billed Medicare for the oral cancer examinations. In addition, Prudential Insurance Company, the Medicare claims agent for New Jersey, rejected such claims. Nevertheless, Lorenzo and U.S. Mobile continued to submit claims, including claims for New Jersey residents, to PBS, in spite of direct instructions to the contrary from the Medical Director of a group of Nursing Homes who threatened to cancel U.S. Mobile's contract. Dentists employed by U.S. Mobile recognized that they were performing screenings, not consultations, and that it was a misrepresentation to bill their services as a consultation. They expressed their concerns to Dr. Lorenzo, who told them not to worry about the billings. Nevertheless, the billings to PBS continued. The record

is replete with evidence that attending physicians never knew that "consultations" had taken place. There were a number of instances where Medicare was billed for a cancer examination of the oral cavity neck and head when the patient was unavailable for an examination for physical or other reasons. Defendants' reliance on the advice given by U.S. Mobile's health care consultant and the PBS representative is not persuasive. It is apparent that such advice, if given at all, was based on the assumption that the procedures were legitimate consultations and not routine checkups.

■ I have no difficulty in concluding that John Lorenzo and U.S. Mobile, vicariously, knew that the information contained on the claim forms was misleading, and deliberately so, in order to receive Medicare payments they were not otherwise entitled to receive. At the very least, they acted in reckless disregard of the truth or the falsity of the information they inserted on the form.

■ The next issue concerns the personal liability of Diana Lorenzo. She was the nominal president of U.S. Mobile. She signed contracts and checks, drove the company automobile, and received compensation by having personal bills paid by the company. But after considering the evidence in its totality, I am not persuaded that she was conscious of, or aware of the falsity of the claims being submitted to Medicare. All decisions were made by John Lorenzo, and Diana Lorenzo was merely a figurehead and not a knowing participant in her husband's ongoing efforts to manipulate the Medicare system.

Having concluded that John Lorenzo and U.S. Mobile are liable under the FCA, I turn now to the government's efforts to pierce the corporate veil on the theory that all the other business enterprises were merely the alter ego of John A. Lorenzo.

The monies obtained by Defendant U.S. Mobile under the Medicare Provider Number of Defendant John A Lorenzo and other dentists were placed in U.S. Mobile's checking account and Defendant John A.

Lorenzo's private practice account—Defendant John A. Lorenzo, D.D.S.

The funds of U.S. Mobile were used in undocumented transactions between U.S. Mobile and the other Defendant entities. For example:

a. Defendant U.S. Mobile entered into two ten year leases with Prime Medica Associates in 1984 and 1985 using the 1985 lease to cancel the first 1984 ten year lease and nearly double the rent.

b. Defendants canceled U.S. Mobile's 1984 ten year lease on 1100 square feet, and in 1985 had U.S. Mobile enter into a new lease for 1200 square feet at double the rental price.

c. Defendants John and Diana Lorenzo were the signatories to these leases representing either U.S. Mobile (lessee) or Prime Medica (lessor).

d. Loans were made between Defendants J.D. Investments, Prime Medica and U.S. Mobile that are undocumented as to terms.

e. Loans were made between John A. and Diana Lorenzo and U.S. Mobile.

None of the other enterprises of Defendants John and Diana Lorenzo who used space at 207 N. Broad Street was ever documented as paying rent to Defendant Prime Medica or known to Defendants' accountants and bookkeeper.

Defendant John Lorenzo also caused U.S. Mobile to enter into multiple contracts for services and space from the other defendants. For example:

a. In 1983 and 1984 Defendant Lorenzo Corporation provided U.S. Mobile with space at 207 N. Broad Street, Philadelphia, Pennsylvania (where U.S. Mobile was purportedly renting from Prime Medica), and services, which resulted in U.S. Mobile owing Lorenzo Corporation in excess of $40,000 in 1984, $80,000 in 1985, and $100,000 in 1986.

b. In 1984 and 1985 Defendant John A. Lorenzo had U.S. Mobile sign contracts with Defendant John A. Lorenzo, D.D.S. (the private dental practice) to provide services, staff, and use of a computer.

c. In 1986 Defendant John Lorenzo had U.S. Mobile contract to buy a photocopier

for his private office at 191 Presidential Boulevard.

Defendants' accountant was not aware of the existence of the obligations created between U.S. Mobile and Defendants' other entities. Defendants John and Diana Lorenzo submitted invoices relating to equipment that had nothing to do with U.S. Mobile, as representing their initial contribution to U.S. Mobile in 1983.

John Lorenzo transferred the services of Mark Strong, D.M.D., from U.S. Mobile to his (Lorenzo's) private practice but continued to pay him from U.S. Mobile funds.

■ There can be no question that corporate formalities were not observed; that significant inter-entity transactions were not documented; and that the corporations and partnerships were treated as a single unit and the alter ego of John Lorenzo.

Finally, it is clear that U.S. Mobile was undercapitalized and that revenues were siphoned off from other ventures. Accordingly, I conclude that the "corporate veil" should be pierced and that the individual John Lorenzo and the business entities should be held liable jointly and severally. *U.S. v. Pisani*, 646 F.2d 83 (3d Cir.1981).

Having found for the plaintiff under the FCA, it is not necessary to discuss plaintiff's other theories of liability.

To the extent that facts have been recited in this discussion that are not specifically enumerated under the heading Findings of Fact, they shall be deemed to have been so enumerated.

In view of the foregoing, the Court arrives at the following

### Conclusions of Law

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. The plaintiff is entitled to judgment under the False Claims Act, 31 U.S.C. § 3729, against John Lorenzo, John Lorenzo, D.D.S., P.C., U.S. Mobile Dental Care Systems, Inc., Prime Medica Associates and J.D. Investments, jointly and severally.

3. Diana Lorenzo, individually, is entitled to judgment in her favor.

4. Plaintiff is entitled to recover three times the amount of damages ($130,719.10 × 3): $392,157.30.

5. Plaintiff is also entitled to receive as a civil penalty a sum of not less than $5,000 nor more than $10,000, for each false claim. See *United States v. Bornstein*, 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976). There were 3,683 false claims filed in this case and, at a minimum, the total penalty would be $18,415,000. It would appear that before the recent amendments to the False Claims Act, the Court had discretion to reduce the penalty where it was excessive and out of proportion to the damages sustained. *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55 (5th Cir.1975). However, the False Claims Act as it now stands limits that discretion to a range between $5,000 and $10,000 per false claim. Accordingly, the plaintiff is entitled to judgment for the additional sum of $18,415,000.

6. Plaintiff is entitled to recover the costs of this action.