UNITED STATES of America,
Plaintiff,

v.

Manuel A CABRERA–DIAZ and
Esther Arbona, Defendants.

No. Civ. 99–2416(JAF).

United States District Court,
D. Puerto Rico.

June 23, 2000.

Asst. U.S. Attorney Jose M. Pizarro–Zayas, Guillermo Gil, United States Attorney, San Juan, PR, for plaintiff.

## OPINION AND ORDER

FUSTE, District Judge.

The United States filed this action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and common law to recover damages and civil penalties from the Dr. Manuel A. Cabrera Díaz and his secretary, Esther

Arbona, for their false claims made in violation of federal and common law under the terms of the Medicare program. Manuel A. Cabrera Díaz, hereafter referred to as Dr. Cabrera, was personally served by the U.S. Marshal Service with copy of the summons and complaint on January 21, 2000. Co-defendant Esther Arbona, hereinafter referred to as Arbona, was personally served by the U.S. Marshal Service with copy of the summons and complaint on January 14, 2000. On February 15, 2000, the United States requested the Entry of Default against both defendants in this case, for failure appear, answer, plead, or otherwise defend, under Rule 55 of the Federal rules of civil Procedure. The Clerk of the Court enter the default of both defendants on February 16, 2000. As of this date defendants have failed to appear, answer, plead or otherwise defend in this case.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345 and its general equitable jurisdiction.

We have before us a Motion for Judgment by Default filed by the United States of America. It appearing from the record on file in this proceeding that default was entered by the Clerk of this Court upon defendants' failure to answer or otherwise plead in this case, and upon review of the allegations contained in the Complaint and in the Motion for Judgment by Default, which have been supported by Affidavits, Sworn or Verified Statements and other documentary evidence, we find Plaintiff is entitled to a Judgment by Default under Rule 55(b)(2) of the Federal Rules of Civil Procedure, and we now enter our findings and conclusions.

## I. THE FACTS

Dr. Cabrera is a physician who, at all relevant times, provided anesthesia services within the District of Puerto Rico. He is a Medicare participant with provider # 28289. Arbona was the billing secretary to CABRERA who, at all relevant times, was responsible for preparing, computing,

calculating and submitting to Medicare the claims for anesthesia services provided by Dr. Cabrera. During the years 1994 and 1995, Cabrera and Arbona presented, or caused to be presented claims for anesthesia services, or made or caused to be made statements to get claims for anesthesia services paid or approved, to Medicare Part B carrier, Triple S, Inc. for the amounts of $400,140.22 in and $304,563.78 for each one of those years.

Anesthesia services is a covered service under Medicare, Part B. The fee schedule amount for physician anesthesiology services is based on allowable base and 15 minute time units multiplied by an anesthesia conversion factor specified for each locality. Anesthesia time involves the continuous actual presence of the anesthesiologist and starts when the anesthesiologist begins to prepare the patient for anesthesia care in the operating room and ends when the patient may be safely placed under post-operative care, under the care of another.

Medicare, Part B, is administered in Puerto Rico by Triple S, Inc. which acts as an agent of the United States of America pursuant to a contract entered into with the Secretary of HHS in accordance with the Medicare Act. 42 U.S.C. § 1395u; 42 C.F.R. Part 431, Subpart C. As Medicare contractor for Part B, Triple S receives, evaluates, processes, reviews, adjusts, rejects, and pays Medicare claims in its capacity as agent of HHS. 42 C.F.R. § 421.200. Under the authority of 42 U.S.C. § 1395u(a)(1)(C) and 42 C.F.R. § 421.200(e), Triple S, Inc. conducted a post payment Comprehensive Medical Review (CMR) or audit of the claims for anesthesia service provided by Dr. Cabrera to Medicare patients during the years 1994 and 1995.

In order to perform this audit, Triple S selected a statistical valid random sample (SVRS), following Medicare methodology and guidelines, which take into account the adequate size of the sample, stratifies the

sample, and provides for the random selection of the claims by strata. Following the aforementioned method, a statistical valid random sample of 230 claims filed by Dr. Cabrera for the year 1994 and 231 claims for the year 1995 were selected.

Triple S requested from the Bayamón Family Hospital (formerly Hospital Matilde Brenes) the medical records related to the anesthesia services billed by Dr. Cabrera of those patients in the sample. The operation reports, anesthesia records, and nursing notes of the patients included in the sample, that were furnished to Triple S by the hospital in which the anesthesia services were provided, were reviewed to check the actual (real) anesthesia time. The medical records of 73 patients included in the sample that were requested by Triple S to the hospital were never provided. Since no information was furnished to support, document or determine the amount due in these 73 claims in the sample, the full amount paid to Dr. Cabrera in these 73 claims was considered as an overpayment.

The time reported in the claim forms submitted by Dr. Cabrera and Arbona to Triple S (Medicare) were compared to the time reported in the operating reports, anesthesia records and nursing notes obtained from the hospital. This audit revealed that Dr. Cabrera and Arbona had overstated, falsely reported, unsupported or undocumented the anesthesia time in all but six of the 461 sampled claims. In the year 1994, on the sample alone, Dr. Cabrera and Arbona billed for 99,270 minutes of anesthesia time, when the evidence provided to Triple S only supported 21,371 minutes of anesthesia time, for a difference of 77,899 of overstated, falsely claimed, unsupported or undocumented anesthesia time. In the year 1995, on the sample alone, Dr. Cabrera and Arbona billed for 90,930 minutes of anesthesia time, when the evidence provided to Triple S only supported 20,987 minutes of anesthesia time, for a difference of 69,943 of over-stated, falsely claimed, unsupported or undocumented anesthesia time.

The amount overpaid to Dr. Cabrera based on the overstated, falsely reported, undocumented or unsupported anesthesia time was $75,338.75 in 1994 and $56,448.99 in 1995, on the sampled claims only.

The results of the aforementioned audit were then projected or extrapolated to the entire universe of claims paid to Dr. Cabrera for the years 1994 and 1995. After applying the standard deviation and allowing for a percentage of sampling error, the result was an estimated overpayment to Dr. Cabrera on account of overstated, falsely claimed, unsupported or undocumented anesthesia time of $237,600.39 for the year 1994 and $211,773.89 for the years 1995.

In addition, Triple S estimates their cost to perform this post payment audit and investigating the claims filed by Dr. Cabrera and Arbona for the years 1994 and 1995 in the amount of $8,929.57.

## II. THE FALSE CLAIMS ACT

Plaintiff contends that Judgment by Default should be entered in its favor under the False Claims Act (31 U.S.C. § 3729 et seq). The False Claims Act establishes seven acts, each of which constitutes a basis for liability. 31 U.S.C. § 3729(a). The most common provisions impose liability on any person who:

(1) knowingly presents, or causes to be presented to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

. . .

(4) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government

. . .

31 U.S.C. § 3729(a).

### A. Claim against the government:

In this case, Dr. Cabrera and Arbona presented or caused to be presented, claims or made or caused to be made statements to get claims paid or approved, to Medicare Part B carrier, Triple S, Inc. These claims are paid with funds provided by the Health Care Financing Administration (HCFA), a component of the United States Department of Health and Human Services (HHS). During the year 1994 CABRERA was paid $400,140.22 and in 1995 $304,563.78 for anesthesia services provided to Medicare beneficiaries. Claims under the Medicare program are claims "upon or against the Government of the United States or any department or officer thereof". Under the Medicare program, claims are not submitted directly to a federal agency but rather to a fiscal intermediaries which contract with the Health Care Financing Administration (HCFA), an agency of HHS, to process Medicare claims. The fiscal intermediaries are usually insurers, that are subsequently reimbursed by the United States. False Medicare claims, however, have been held uniformly to be within the ambit of the False Claims Act. *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.) *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975); *United States v. Lorenzo*, 768 F.Supp. 1127 (E.D.Pa.1991); *United States v. Pani*, 717 F.Supp. 1013 (S.D.N.Y.1989); *United States v. Oakwood Downriver Medical Center*, 687 F.Supp. 302 (E.D.Mich.1988).

Also, in the 1986 amendment to the False Claims Act, Congress defined "claim" to include

Any request or demand . . . made to a contractor, grantee, or other recipient if the United States government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient

. . .

31 U.S.C. § 3729(c). The breath of this language appears to reflect congressional intent to adopt a mechanical approach, based simply on the existence of an impact on federal funds.

### B. Knowledge and Intent:

██ The audit conducted by Triple S revealed that in all but six (455 of the 461) of the sampled claims the anesthesia time had been overstated, falsely reported, unsupported or undocumented. This demonstrates that Dr. Cabrera, the anesthesiologist that billed Medicare for this services, and Arbona, his billing secretary, had either actual knowledge or constructive knowledge of the falsity, in that they acted in reckless disregard of the truth, or certified information (anesthesia time) in support of the claims with neither personal knowledge of its accuracy nor reasonable investigative efforts. It appears that either they acted with actual knowledge that the information was false, or hided behind a shield of self-imposed ignorance. Dr. Cabrera cannot escape liability on the basis of lack of knowledge of the fraud when he has purposefully turn the blind eye to the conduct of Arbona, his subordinate.

The False Claims Act, 31 U.S.C. § 3729(b), provides that:

For the purpose of this section, the term "knowing" and "knowingly" means that a person, with respect to information—

(1) had actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information,

and no proof of specific intent to defraud is required.

The case law construing 31 U.S.C. § 3729(b) affirms the clear language of the statute and the intentions of Congress that "no proof of specific intent to defraud is required". *Tyger Construction Co., Inc. v. United States*, 28 Fed.Cl. 35, 54 (1993); *United States ex rel. Wang v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir.1992); *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir.1991) ("what constitutes the offense is not intent to deceive but knowingly presentation of a claim that is either 'fraudulent' or simply 'false' "); *United States v. Incorporated Village of Island Park*, 888 F.Supp. 419 (E.D.N.Y.1995); *United States v. Entin*, 750 F.Supp. 512, 518 (S.D.Fla.1990) (intent of fraud no longer required); *United States v. Oakwood Downriver Medical Center*, 687 F.Supp. 302 (E.D.Mich.1988); *United States v. Hercules, Inc.*, 929 F.Supp. 1418 (D.Utah 1996).

An employer will not be able to escape liability by proving its ignorance of an employee's false statement. The employee's knowledge that a claim is false will be imputed to his or her employer. *Entin*, 750 F.Supp. At 519, *United States v. DiBona*, 614 F.Supp. 40, 44 (E.D.Pa. 1984).

### C. Damages, Civil Penalties and Costs:

The False Claims Act provides that any person who violates its provisions is liable to the United States for "a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a). Persons violating the Act are also liable for the cost of litigation. *Id.*

There is no set formula for measuring damages under the False Claims Act. Damages have been measured in a variety of ways and the measure applied by the courts in specific cases has been greatly influenced by the nature of the fraud and the type of Government transaction affected by it.

The Supreme Court addressed damages under the False Claims Act in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). In this case the Supreme Court established a simple rule of damages under the Act; the amount the Government would not have paid had it known the true facts. This measure is stated more explicitly in the District Court opinion in *Hess*, 41 F.Supp. 197 (W.D.Pa.1941), which is endorsed by the Supreme Court in the last four lines of its opinion. 317 U.S. at 552, 63 S.Ct. 379. The Supreme Court in *Hess* also stressed the purpose of the statute to "afford the government complete indemnity for the injuries done it," and to make the Government "completely whole." 317 U.S. at 549, 552, 63 S.Ct. 379.

In many Government programs, a payment or monetary entitlement given to an eligible recipient is determined according to criteria and formulas set forth in statute or regulations. For example, in the Medicare program, payments are made to anesthesiologists for anesthesia services according to criteria and formulas set forth in the statutes and regulations. In such cases, the proof of damages requires that the true data be determined and then inserted into the agency algorithm to calculate the amount of the overpayment. The legal underpinning for this process is *United States v. Woodbury*, 359 F.2d at 379: "[T]he measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful."

Anesthesia services is paid by Medicare on the basis of 15 minute time units. In this case Dr. Cabrera was paid based on the time (in minutes) that he and Arbona reported to Medicare. This data was inserted into the Medicare's recurrent computation procedure operated by Triple S, which calculated the amount due for

said services. In the course of the post payment review or audit the medical records of a sample of the patients were obtained from the hospital in which the anesthesia services were provided. These medical records included operation reports, anesthesia records, and nursing notes of the patients included in the sample. The anesthesia time documented in the medical records was compared to the time reported by Dr. Cabrera and his billing secretary in the claim to Medicare. The real anesthesia time shown in the medical records was inserted into the Medicare's recurrent computation procedure operated by Triple S, which calculated the amount that would have been paid for said services. The difference between the amount paid out by reason of the false statements over and above what it would have paid if the claims had been truthful is the measure of the Government damages in this case.

Not all the claims submitted by Dr. Cabrera and Arbona to Triple S (Medicare) in 1994 and 1995 were audited. In this case, Triple S selected a statistical valid random sample (SVRS), following Medicare methodology and guidelines, which take into account the adequate size of the sample, stratifies the sample, and provides for the random selection of the claims by strata. Following the aforementioned method, a statistical valid random sample of 230 claims filed by CABRERA for the year 1994 and 231 claims for the year 1995 were selected. The results were then extrapolated from the sample to calculate he amount of the Medicare overpayment.

Numerous cases involving Medicaid and Medicare overpayments have endorsed proof of damages through the use of statistics and statistical sampling. In *Ratanasen v. State of California*, 11 F.3d 1467 (9th Cir.1993), and *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 89–90 (2d Cir.1991), the Ninth and Second Circuits rejected plaintiffs' due process challenges to the use of statistical extrapolation from a sample to calculate the amount of Medicaid overpayments. Likewise, the District of Columbia Circuit upheld HHS' disallowance of claims based on extrapolations from audits from a random selection of Medicare claims. *Chaves County Home Health Service v. Sullivan*, 931 F.2d 914 (D.C.Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992). The Seventh Circuit, in a recoupment case, agreed that "the use of statistical samples had been recognized as a valid basis for findings of fact in the context of Medicaid reimbursement." *Illinois Physicians Union v. Miller*, 675 F.2d 151, 155 (7th Cir. 1982).

In *Illinois Physicians Union*, the court emphasized an important consideration at issue in the matter:

> The Department processes an enormous number of claims and must adopt realistic and practical auditing procedures. We agree with the district court's conclusion that, in view of the enormous logistical problem of Medicaid enforcement, *statistical sampling is the only feasible method available.*

675 F.2d at 157 (emphasis added). See also *Mile High Therapy Centers, Inc. v. Bowen*, 735 F.Supp. 984 (D.Colo.1988) (Health Care Financing Administration could adopt statistical sampling method for conducting audits in case of voluminous Medicare claims when case-by-case review was not administratively feasible).

In *Georgia v. Califano*, 446 F.Supp. 404 (N.D.Ga.1977), Georgia challenged the Department of Health, Education and Welfare's withdraw of $3.5 million in Medicaid reimbursements, claiming HEW's decision was arbitrary and capricious because the amount of overpayment had not been determined on a claim-to-claim review. The court ruled for HEW, concluding that:

> The use of statistical samples was not improper. Projections of the nature of a large population through review of a small number of its components has been recognized as a valid audit technique and approved by federal courts . . .

446 F.Supp. at 410 (citing *New Jersey Welfare Rights Organization v. Cahill,* 349 F.Supp. 501 (D.N.J.1972), *aff'd,* 483 F.2d 723 (3rd Cir.1973); *Rosado v. Wyman,* 322 F.Supp. 1173 (E.D.N.Y.), *aff'd,* 437 F.2d 619 (2nd Cir.1970), *aff'd,* 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971)). Again, the court emphasized that

> Audit on an individual claim-by-claim basis of the many thousands of claims submitted each month by each state would be a practical impossibility as well as unnecessary.

■ The False Claims Act provides for treble damages, or not less than double damages if the defendant falls within the voluntary disclosure provisions of the Act. 31 U.S.C. § 3729(a). The Government's actual (or single) damages should be multiplied by the appropriate factor *before* deducting any payments which may have been made, *United States v. Bornstein,* 423 U.S. 303, 314–17, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976).

In this case the Supreme Court reasoned that computing damages by this method "most faithfully conforms to the language and purpose of the Act" to make the Government whole. 423 U.S. at 314, 96 S.Ct. 523. First, it compensates the government for the cost, delays, and inconveniences occasioned by fraudulent claims. Second, it fixes liability on the defrauder without reference to the adventitious acts of others. Third, the alternative would enable wrongdoers to escape the consequences of his fraud by tendering single damages at any time before judgment, and render the multiple damages provision meaningless. 423 U.S. at 317, 96 S.Ct. 523. We therefore find that treble damages are applicable in the case at bar.

In addition to the treble damage provisions discussed above, the False Claims Act provides that a person who commits any of the acts specified in 31 U.S.C. § 3729(a)(1)–(7) is liable for a "civil penalty of not less than $5,000 and not more than $10,000.".

The report of the Senate Judiciary Committee summarizes the law with respect to civil penalties as follows:

> The imposition of this forfeiture is automatic and mandatory for each claim which is found to be false. The United States is entitled to recover such forfeiture solely upon proof that false claims were made, without proof of any damages. *Fleming v. United States,* 336 F.2d 475, 480 (10th Cir.1964), cert. denied, 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965). A forfeiture may be recovered from one who submits a false claim though no payments were made on the claim. *United States v. American Precision Products Corp.,* 115 F.Supp. 823 (D.N.J.1953)
>
> . . . .
>
> Each separate bill, voucher or other "false payment demand" constitutes a separate claim for which a forfeiture shall be imposed, see for example, *United States v. Bornstein,* 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976), *United States v. Collyer Insulated Wire Co.,* 94 F.Supp. 493 (D.R.I.1950), and this is true although many such claims may be submitted to the Government at one time. For example, a doctor who completes separate Medicare claim for each patient treated will be liable for a forfeiture for each such form that contains false entries even though several such forms may be submitted to the fiscal intermediary at one time.

S.Rep. No 345, 99th Cong., 2d Sess. 8–10 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273–75.

■ As stated by Congress, the "United States is entitled to recover [civil penalties] solely upon proof that false claims were made, without proof of any damages." S.Rep. No. 345, 99th Cong., 2d Sess. 8 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273. The primary cases concerning the issue are *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943); *Rex Trailer Co. v. United States,* 350 U.S. 148,

76 S.Ct. 219, 100 L.Ed. 149 (1956); and *United States v. Rohleder,* 157 F.2d 126 (3rd Cir.1946). *See also In re Schimmels,* 85 F.3d 416 (9th Cir.1996)

■ The legislative history of the 1986 amendments makes clear that civil penalties are "automatic and mandatory for each claim which is false." S.Rep. No. 345, 99th Cong., 2d Sess. 8 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273. Thus, up to a certain point, the number of civil penalties, or whether to even assess civil penalties, is not discretionary. "This forfeiture provision is mandatory; it leaves the trial court without discretion to alter the statutory amount." *United States v. Hughes,* 585 F.2d 284, 286 (7th Cir.1978). However, the point at which a court may gain some discretion and limit the number of penalties is when the penalties are deemed "excessive". *See United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

■ In this case, the audit revealed that Dr. Cabrera and Arbona had overstated, falsely reported, unsupported or undocumented the anesthesia time in all but six of the 461 sampled claims, that is 455 false statements/claims on the sample alone. If this Court was to imposed civil penalties between $5,000.00 to $10,000.00 for each one of the 455 false claims, in addition to the treble damages, the same would range between $2,275,000.00 and $4,550,000.00. We deem this amount to be excessive and therefore no civil penalties are hereby imposed.

In addition to treble damages and civil penalties, "[a] person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages". 31 U.S.C. § 3729(a). *See also BMY–Combat Systems Division of Harsco Corporation v. United States,* 44 Fed.Cl. 141 (Fed.Cl.1999). Triple S has calculated the costs of the post payment audit alone to be $8,929.57.

### D. Joint and Several Liability:

■ As with other civil claims, when two or more persons act in concert in violation of the False Claims Act, they are jointly and severally liable. *Mortgages, Inc. v. U.S. District Court for District of Nevada,* 934 F.2d 209, 212 (9th Cir.1991); *United States v. Hughes,* 585 F.2d 284, 286 n. 2 (7th Cir.1978); *United States v. Aerodex,* 469 F.2d 1003, 1013 (5th Cir.1972); *United United States v. Uzzell,* 648 F.Supp. 1362, 1368 (D.D.C.1986); *United States v. Kates,* 419 F.Supp. 846, 854–55 (E.D.Pa.1976).

■ Individuals and corporations can be sued together in one action, with each being jointly and severally liable for the total treble damages and civil penalties sought. *United States v. Cooperative Grain & Supply Co.,* 476 F.2d 47 (8th Cir.1973); *United States v. Aerodex,* Inc. 327 F.Supp. 1027 (S.D.Fla.1970), *aff'd in part and rev'd in part,* 469 F.2d 1003 (5th Cir.1972); *United States v. American Packing Corp.,* 125 F.Supp. 788 (D.N.J. 1954).

■ Dr. Cabrera is the physician who provided the anesthesia services and received the Medicare payments. Arbona was his secretary who, at all relevant times, was responsible for preparing, computing, calculating and submitting to Medicare the claims for anesthesia services provided by Dr. Cabrera. Therefore, we find that they are jointly and severally liable in this case.

### E. Statute of Limitations:

The False Claims Act contains the following limitations period:

(b) A civil action under 3730 may not be brought—

(1) more than 6 years after the date on which the violations of section 3726 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the

United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731.

■ Thus, the United States may bring a False Claims Act action either within six years from the date of the violation of the Act, or up to three years from the date the "official of the United States charged with responsibility to act in the circumstances" is made aware of the facts "material to the right of action," whichever occurs last. No more than ten years, however, may elapse from the date of the violation to the date the action is commenced.

■ The present action include only Medicare claims submitted by Dr. Cabrera and Arbona in the years 1994 and 1995, which were due on or before 2000 and 2001, respectively. This civil action was filed on December 28, 1999, and therefore is within the six year statute of limitations.

## III. JUDGMENT BY DEFAULT

Rule 55(b)(2) of the Federal Rules of Civil Procedure allow for the Court to enter judgment by default against any party who is in default and has failed to plead or otherwise defend as provided by said rules.

. . . .

Rule 55(b)(2) prescribes the procedure to be followed when a judgment is sought against a litigant in default in situations that lie beyond the powers delegated to the clerk under Rule 55(b)(1). Thus, the rule provides that "if the party against whom judgement by default is sought *has appeared in the action,* the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." The court has discretion to decide whether to enter a judgment by default, however and Rule 55(b)(2) empowers the district judge to hold hearings or "order such references as it deems necessary and proper" to aid its exercise of this discretion.

. . . .

10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2684. (footnotes omitted) (emphasis supplied)

■ As of this date more than 120 days have elapsed from the personal service of process, and defendants have failed to appear, answer, plead or otherwise defend in this case.

Rule 55 does not require that testimony be presented as a prerequisite to entry of a default judgment, and thus several courts have determined that a hearing is not required before entering a default.

. . . .

Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2688. (footnotes omitted)

## IV. CONCLUSION

In conclusion, a review of the record and case law reveals that defendants have knowingly presented or caused to be presented false or fraudulent claims to the United States; and/or made, use or caused to be made or use false statements to get false or fraudulent claims paid or approved by the United States.

Wherefore, in view of the foregoing, plaintiff's Motion for Judgment by Default is GRANTED. Judgment shall be entered in its favor and against the defendants jointly and severally for treble (three times) the damages sustained by the United States in the amount of $237,600.39 for the year 1994 and $211,773.89 for the years 1995, which totals an aggregate amount of $1,348,122.80, plus costs incurred by the plaintiff as the result of defendants' false claims in the amount of

$8,929.57. Judgment shall be entered accordingly.

SO ORDERED